## In re EMPIRE METALLIC BEDSTEAD CO.

(District Court, N. D. New York. June 28, 1899.)

1. BANKRUPTCY—ACTS OF BANKRUPTCY—APPLICATION BY CORPORATION FOR VOLUNTARY DISSOLUTION.

Where a corporation, under the provisions of a state statute, files in a state court its voluntary application for dissolution and for the appointment of a receiver to wind up its affairs and distribute its assets, such application is not an assignment for the benefit of its creditors, nor equivalent thereto, and does not constitute an act of bankruptcy by the corporation.

2. SAME.

Even if such a proceeding were equivalent to an assignment for the benefit of creditors, as producing similar results, still the provisions of the bankruptcy law, defining acts of bankruptcy, cannot be extended by construction to embrace transactions equivalent to, but not identical with, those denounced as acts of bankruptcy.

In Bankruptcy.    On motion for adjudication in involuntary bankruptcy.

The following are the report and opinion of the referee in bankruptcy (William H. Hotchkiss, Referee):

This is an issue referred to me by stipulation of all parties, on an order of the district court bidding me to report on the facts, with my opinion. There is practically no dispute as to the facts. Indeed, those that are essential to a decision of the main question at issue are stipulated. The alleged bankrupt is a manufacturing corporation organized under the laws of the state of New York. Finding itself to be insolvent, it on April 27, 1899, on the petition of its board of directors, began a proceeding, under section 2419 of the New York Code, for a voluntary dissolution of such corporation, and, incident to such dissolution, under section 2423, asked and was granted the appointment of Edward C. Baynes, its president, as temporary receiver of all its property. At the time of the argument, the attorney for the alleged bankrupt seemed loath to admit that the corporation was "insolvent," in the sense given that word in section 1 of the act of 1898; but in his brief, filed subsequently, he asserts that the corporation does not deny its insolvency, and submits the broad question denuded of technicalities. Even had he not done so, in view of Lea v. George M. West Co., 91 Fed. 237, and Bray v. Cobb, 91 Fed. 102, proof of the solvency of this corporation might not have availed in this proceeding. The petition, as filed, does not allege that this corporation is a manufacturing corporation, but the answer seems to admit that fact. The point was raised on the argument by the attorney for the corporation, but was overruled on the ground that, having admitted the character of the corporation in his answer, he could not later avail himself of the omission complained of.

Aside from these two disputed matters, both of which seem now to be conceded by the attorney for the alleged bankrupt, there is no question of fact at issue. The inquiry can therefore be directed to the broad proposition whether when, in New York, an insolvent manufacturing corporation applies for its dissolution under the state law, and, incident to such application, a temporary receiver is appointed to take charge of its property, such a transaction is, within the meaning or purpose of the bankruptcy act of 1898, an act of bankruptcy, entitling its creditors, who make the petition within the statutory limitation as to time, to an adjudication of the bankruptcy of such corporation. The question raised is not only novel, but a solution of it is of great importance to the commercial world. It is probably within reason to say that a goodly proportion of the business of the country is now transacted by corporations which, under section 4, subd. b, may be adjudged involuntary bankrupts. It is doubtless equally true that in all the states the assets of these corporations, when dissolved, either at the instance of the sovereign power of the state, of a creditor, or of the officers of the corporation itself, are turned over to receivers appointed by the state courts, and by them distributed. If the contention of this alleged bankrupt is well grounded, all of these corporations may, without restraint, even though insolvent, insist that the interdiction against voluntary assignments for the benefit of creditors put on natural persons by the act of 1898 does not apply to them, and thus a vast majority of such cases be wound up in the state courts, and the bankruptcy act be, to this extent, rendered a nullity. So far as I have been able to learn, this question was not passed on under any of the previous bankruptcy laws. It certainly has not until now come up under the present statute. In re Etheridge Furniture Co., 92 Fed. 329, is a case where a corporation made a general assignment. I have therefore sought to give it an investigation as exhaustive as its importance merits, and, in doing so, have been tempted, by the catholic spirit evinced by the able attorneys who argued it, to treat it as an academic problem, as well as determining a controversy of vital importance to this corporation and its creditors.

The old-time question of jurisdiction was early eliminated from this controversy. Indeed, it could not well be insisted on. Ever since Sturges v. Crowninshield (1819) 4 Wheat. 122, and Ogden v. Saunders (1827) 12 Wheat. 213, the right of congress to pass a bankruptcy statute which should be paramount to state insolvency laws has been conceded. While it has been held that, in pursuance of this power, congress could not pass a law which would oust the state

of its control over the existence of corporations to which its laws gave birth, yet it has been frequently held that there are, in effect, two proceedings when an insolvent corporation is wound up, viz.: The dissolution of the corporation, over which the state alone, short of the usual elements which give federal courts jurisdiction, has power; and the marshaling and distributing of the assets of the corporation, over which, in proper cases, the federal courts had the paramount right to preside. In re Merchants' Ins. Co., Fed. Cas. No. 9,441: In re Independent Ins. Co., Fed. Cas. No. 7,017; In re Washington Marine Ins. Co., 2 N. B. R. 648, Fed. Cas. No. 17,246; Platt v. Archer, Fed. Cas. No. 11,213; Hart v. Railroad Co., 40 Conn. 524; In re New Amsterdam Ins. Co., Fed. Cas. No. 10,140; also Chandler v. Siddle, Fed. Cas. No. 2,594. It has also been frequently held—and this is in answer to the point urged by the alleged bankrupt on the authority of Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570, that, when a state court has assumed jurisdiction over a corporation through its receiver, the federal courts will not interfere with such jurisdiction or the possession thereunder—that this rule yields to the broader rule in bankruptcy. Thornhill v. Bank, 5 N. B. R. 375, Fed. Cas. No. 13,991; In re National Life Ins. Co., 6 Biss. 36, Fed. Cas. No. 10,046; In re Merchants' Ins. Co., supra; Buchanan v. Smith, 16 Wall. 277–308. In spite of this corporation's application to the state court for a dissolution, and the appointment of a temporary receiver by such court, the local law necessarily yields to the general law, and an adjudication of bankruptcy will be granted if it shall be determined that this corporation has committed an act of bankruptcy.

On the argument, it was urged by the petitioning creditors that this transaction brought the alleged bankrupt within the first act of bankruptcy found in the law of 1898, in that it had conveyed and transferred its property with intent, at least, to hinder and delay its creditors. Compare section 3, subd. a, cl. 1, with section 1, cl. 25. Many of the cases which arose under the law of 1867 turned upon a like contention, based upon similar words in the act, and cases will be found both ways. But the words which constitute the first of the five acts of bankruptcy have from time immemorial, in the minds both of the bar and of the bench, been associated with actual fraud, and I should be loath to hold this corporation a bankrupt on the ground that, in applying for a receivership, it has committed an actual fraud on its creditors; and that, too, irrespective of whether its action is or is not a fraud on the act. Nor is it necessary to so hold, as the issue can well be decided on the proper construction of other acts of bankruptcy, and by an examination of the intent of congress and the purpose of the law.

The petitioning creditors seem to rest their case upon two contentions: First (section 3, subd. a, cl. 5), that the transaction complained of amounted to an admission in writing of the corporation's inability to pay its debts, and a willingness to be adjudged a bankrupt on that ground; and, second (Id. cl. 4), that it has committed an act which, under the laws of the state of New York, is the equivalent of a general assignment by the corporation for the benefit of its creditors.

As to the first of these propositions, the contention of the petitioning creditors does not seem well founded. Indeed, they do not strongly urge it. It may well be asked whether the fifth act of bankruptcy is of any value, other than either to those rare individuals who are so squeamish as not to wish, as it were, to sign their own commercial death warrants, but who prefer to send a letter through the mails, and let a creditor, on the strength of it, begin a proceeding, or else to corporations who seek to avail themselves of the method there provided to go into involuntary bankruptcy voluntarily. The case at bar is not one in which this act of bankruptcy is available. It will not be denied that this corporation, in its application for a receiver, admitted in writing that it was unable to pay its debts: but, on the other hand, it cannot be asserted that by so doing it admitted its willingness to be adjudged a bankrupt on that ground. In fact, by making this application in the state court, instead of the federal, it indicated its unwillingness to be adjudged a bankrupt. The two elements must appear. One is lacking. Therefore, without any discussion of the difference between the meaning given by the courts to the words "bankrupt" and "insolvent," it must be held that these creditors cannot safely rest their case upon the fifth of the acts of bankruptcy.

As to the second of these propositions, however, I am convinced that the petitioning creditors are right. When the case was argued, and even while, prior to the filing of the briefs, I was making an independent investigation, I felt that this corporation had not committed an act of bankruptcy, and that an adjudication should be denied; but a further investigation into the phrasing of the law, and a consideration of the results on creditors of insolvent corporations, should the opposite conclusion be announced and sustained, have led me to recommend that an adjudication be granted.

The points urged by the alleged bankrupt are, in brief, the following: First. That nowhere in the law of 1898 is the transaction in question made an act of bankruptcy; that this corporation could make a general assignment, and, had it done so, would have committed an act of bankruptcy; and that it is a forced and unreasonable construction to say that a receivership for the purpose of winding up the corporation's affairs is equivalent to the general assignment of an individual for the benefit of creditors. Second. That the New York statute controlling upon the winding up of insolvent corporations is in harmony with the federal statute regulating the marshaling and distribution of the assets of a bankrupt, and, if in harmony, jurisdiction already obtained by the state courts should not be ousted.

It is unnecessary to enlarge here upon these arguments. They were urged with much force and with great ability, and should be controlling upon the court's answer to the main proposition, unless they can be conclusively answered, or unless their logical outcome will negative the purposes of the bankruptcy act of 1898.

An examination of the law of 1898 negatives the contention that the use of the words "general assignment for the benefit of creditors" is necessarily exclusive of a transaction such as that in the case at bar. The clause under construction, with unnecessary words eliminated, is as follows: "Acts of bankruptcy by a person shall consist of his having * * * (4) made a general assignment for the benefit of his creditors." The use of the word "person" is important. By reference to section 1, cl. 19, it will be seen that the word "person" includes "corporation," except where otherwise specified; and, by clause 29, words embracing the plural number may apply to or mean only a single person or thing. It would have been nonsense to have said, "Acts of bankruptcy by a person shall consist of his having * * * (4) made a general assignment for the benefit of his creditors, or applied for a receiver under a state law to wind up the affairs of a corporation on the ground of the insolvency thereof." Acts of bankruptcy are expressed in a single paragraph, and predicated of a single human being. Corporations and partnerships are included by general clauses elsewhere. The same method was followed under the law of 1867, §§ 39, 48. Compare, also, section 59, subd. b, of the act of 1898, for another like use of the word "person" in the broadly generic sense. Still further, an examination of the statute shows that, whenever any striking exception to the well-known policy of a bankruptcy law was inserted, that exception was marked by specific words. Thus, bankruptcy legislation, per se, should be binding upon all persons and corporations; yet by section 4 it is provided that "any person who owes debts, except a corporation, shall be entitled to the benefits of this act as a voluntary bankrupt"; and, by the same section, that "any natural person, except a wage earner or a person engaged chiefly in farming or the tillage of the soil, * * * shall be subject to the provisions and entitled to the benefits of this act." Still further, unless something is inserted to the contrary, a bankruptcy law being uniform, exemptions should be uniform; yet an exception to this principle is found in the specific words of section 6. There are no such exceptions in section 3, subd. a. Corporations, partnerships, and individuals can commit all the acts of bankruptcy. Persons cannot apply for receiverships. Partnerships, as such, cannot, but corporations can. In fact, it is their natural route towards liquidation. If, then, the results of the two methods of winding up the affairs of insolvent corporations are substantially the same, and it appears that, for reasons of syntax, but one is expressed, and that it was the policy of the framers of the law to indicate by unmistakable words any marked diversions from the usual provisions of a bankruptcy law, it can be safely asserted that, by the words "general assignment for the benefit of creditors," congress meant to include the

equivalent act of a corporation applying for a receivership to wind up its affairs.

It is, of course, true that a corporation, in the state of New York, at least, can now make a general assignment for the benefit of creditors. This, it is thought, was not so until the enactment of section 48 of the stock corporation law in 1890. Croll v. Knitting Co., 17 App. Div. 282, 45 N. Y. Supp. 680; Bank v. Brewster, 17 Misc. Rep. 143, 41 N. Y. Supp. 203; Bish. Insolv. § 117 et seq.; Burrill, Assignm. § 45. But a general assignment is not the usual method adopted by corporation lawyers in winding up these creatures of the state. For obvious reasons, the other way is more popular. The dissolution proceedings provided for by the Code of Civil Procedure not only does two things at once,—dissolves the corporation and distributes its assets, the first of which a general assignment does not do, but, as the practice has been worked out, the only adverse party usually notified, or who appears at the time the application is made for the dissolution and the temporary receiver, is the attorney general, with the result that instead of the receiver being the choice of the court, as is the theory of the law, he is the choice of the corporation or of the corporation's attorney. From this point forward, the administration of a corporation's assets is, in effect, in the hands of the receiver and the attorney; applications to court for permission to sell and the like being usually without notice, and merely perfunctory steps to keep within the terms of the law. Nor is there a practical difference in the matter of preferences. An individual can prefer to the extent of one-third. But since July 1, 1898, he has ceased to avail himself of the privilege, and it cannot be presumed that it was the expectation of the framers of the bankruptcy law that a failing debtor who made an assignment would continue the practice. No different is it as to corporations. By the law of New York, they cannot prefer, for any preferences made while they are insolvent can be set aside. This equivalence continues throughout. The assets are collected and distributed without preferences, by a man chosen by the failing debtor, with little supervision by the courts, and, as a rule, with few notices to creditors, or any active co-operation on their part. Therefore a corporation, in applying for a receiver, and the administration of the bankrupt concern's assets through that officer, is, in its effect, strikingly equivalent, even if not equal, to a general assignment for the benefit of creditors. If, from the standpoint of a creditor,—which is the only standpoint to be taken by a bankruptcy court,—there is any difference, other than that in the one the court formally accepts and appoints the nominee of the debtor, and that in the other the debtor itself chooses the assignee, I have not been able to discover it. There is a distinction, it is true, but it is one which, in practice, is without a difference. The attorney for the alleged bankrupt calls attention to the analogy which exists between the effort frequently made in this state and elsewhere to hold transfers by insolvent debtors through the instrumentality of chattel mortgages, deeds, and bills of sale general assignments, and therefore void, because preferring one creditor to a larger extent than permitted by the statute; but he overlooks the fact that the state courts, in refusing to hold such transactions equivalent to general assignments, were not construing a system of jurisprudence, the cardinal principle of which is, by sweeping aside all artificial distinctions, in summary fashion, if necessary, to get at equality of payment, and thus equity to all.

But the most impressive of the arguments urged by the alleged bankrupt is that the state statute and the federal statute are in harmony, and that, therefore, the court which obtained jurisdiction first should be allowed to administer the estate. If they are in harmony, there is no doubt that the alleged bankrupt is right; but are they? Bankruptcy laws have two main and several minor objects. The main objects are: (1) That an honest debtor may obtain a discharge enforceable throughout the limits of the United States; (2) and, as a condition precedent to such discharge, that he shall submit his property to the court and its officers, and that the same, with certain humane exceptions, called "exemptions and priorities," shall be distributed ratably among all his creditors. Buchanan v. Smith, 16 Wall. 277; Bailey v. Glover, 21 Wall. 342; Fisher v. Vose, 38 Am. Dec. 243. Among the minor objects of such a law are: (1) That the estate of a debtor shall be cheaply and speedily administered; (2) that the priorities allowed shall be uniform; (3) that

creditors shall have notice of all proceedings; and (4) most important, that the estate shall be marshaled and distributed by an officer chosen by the creditors. If this is a fair statement of the objects of the law, the statute of New York controlling on the marshaling and distributing of a corporation's assets is not in harmony with the bankruptcy act. It cannot, of course, be said that there is the same merit in the contention of these creditors that there would be were they creditors attacking an individual on the ground that he had made a general assignment, either with or without preferences; but the harmony urged on the argument, and again asserted in the brief of the counsel for the alleged bankrupt, does not really exist. Compare Shyrock v. Bashore, 13 N. B. R. 481, Fed. Cas. No. 12,820.

The first of the great objects of the bankruptcy law is of no moment here. A discharge from debts is not asked for, because the dissolution of a corporation is sought, and it, so far as its creditors are concerned, dies. It has neither a future nor a hereafter. Its debts die with it. Shyrock v. Bashore, supra. But what of the second great object of a bankruptcy law,—ratable distribution? It is urged with much force, and equal truth, that, under the state law, this corporation could not prefer one creditor over other creditors, and it is not claimed that it seeks other than a ratable distribution. But whatever the corporation may or may not have done the law does for it, and in that is the want of harmony which alone entitles these petitioning creditors to an adjudication.

It is unnecessary to go into the mooted question of the title possessed by a temporary receiver intermediate his appointment and his appointment as a permanent receiver, or his title after he shall become a permanent receiver. Neither is it necessary to review the mass of judicial decision which sometimes recognizes, sometimes refuses to recognize, a receiver's right to sue in a foreign jurisdiction. Booth v. Clark, 17 How. 322; Chandler v. Siddle, 10 N. B. R. 236, Fed. Cas. No. 2,594. It is sufficient to say that, in spite of decisions which are confusing in the extreme, the law in the United States, differing from the law in England, is to the effect that, while a receiver will usually be allowed by comity to sue in another state, his title to property which may be in that state, and therefore his right to possession, will be recognized by the courts of that state only to such an extent as will not conflict with the rights of the citizens of that state or with public policy. Gluck & B. Rec. (2d Ed.) p. 222; 20 Am. & Eng. Enc. Law, pp. 34, 35, 65; Smith, Rec. § 240; Bank v. Lacombe, 84 N. Y. 367; Attorney General v. Atlantic Mut. Life Ins. Co., 100 N. Y. 279, 3 N. E. 193; Folger v. Insurance Co., 99 Mass. 267; Simpkins v. Smith, 50 How. Prac. 56; and American Nat. Bank of Denver v. National Benefit & Casualty Co., 70 Fed. 420. The decisions in one state are too apt to be the reverse of those in another. It did not appear on the argument that this corporation had property in other states, though, from the fact that a majority of the petitioning creditors are nonresidents of New York, it can be inferred that a goodly number of its debtors, as well, are citizens of other states. Even if the situs of a debt due a corporation is the place where the corporation is domiciled,—though this is not, apparently, a rule uniformly recognized,—there is no question but what a majority of the states permit their citizens, by garnishee process or analogous proceedings, to seize the property of an insolvent corporation domiciled in another state, and recognize their title and interest as paramount to the title and interest of a foreign receiver. If, then, in some of the states, the question of a foreign receiver's title to an insolvent corporation's property therein is unsettled, and, still more, if in a very large number of states it is settled against a receiver, what of the doctrine of preferences? I am informed, though it was not stated on the argument, that garnishee process has already been begun in the state of Pennsylvania against some of this corporation's property there. Whether that be true or not, the principle is the same. If courts of other states permit creditors resident of such states to resist the title of a receiver under the laws of this state, those creditors by operation of law may become preferred, and, so far as they are concerned, and therefore all the other creditors whose dividends are thereby reduced, the main purpose of the law may be violated. The same argument may be made, if, instead of preferences, the subject under investigation be the priorities allowed in different states, or if the subject be the ex-

penses of administration. Congress has given creditors the right to insist that the priorities and expenses be no more than those fixed by the federal law of 1898. State laws are in this particular harmonious neither with each other nor with the federal statute. As a rule, the state statutes are more liberal. The general creditors have the right to insist that that difference be theirs, rather than the property of creditors given priority locally, or receivers or assignees chosen by the defunct concern. It is urged that the state law provided that creditors be notified and consulted, as does the federal law; but an examination of the sections of the Code concerning notice and of the sections of the bankruptcy law on the same point, to say nothing of the want of notice characterizing the state proceeding in actual practice, will at once bring out the marked difference between the two statutes. But more important than any of the minor objects of the bankruptcy system is that it puts into the hands of creditors the right to choose the officer who shall administer the estate. In the case at bar the creditors were not consulted, and the receiver appointed is the president of the defunct corporation. He is a reputable citizen, and doubtless competent to be the court's representative; but it has been held from time immemorial in England, and similar dicta will be found in many of the cases under our law of 1867, that one of the main objects of the bankruptcy system is to put the personnel of the administrating officer into the hands of the creditors. Thus might the parallelism be carried further. The harmony between the two statutes, therefore, becomes very inharmonious, and the second point urged by the alleged bankrupt valuable to the petitioning creditors, rather than to it.

With these differences and the results to be accomplished in mind, it will bear repetition that it has been often held that a bankruptcy law is a remedial statute, and that it should be construed with a view to effect its objects, and perform justice between a debtor and his creditors. In re Muller, Fed. Cas. No. 9,912. It will not be forgotten, also,—and there can be no doubt about the propriety of the ruling,—that. where there is a doubtful meaning to a phrase in the bankruptcy law, that construction should be controlling that will give the most uniform operation throughout the country. Railroad Co. v. Jones, 5 N. B. R. 97, Fed. Cas. No. 126. The purpose of the words "made a general assignment for the benefit of creditors" is clear, when applied to the act of a natural person. It is not so clear—indeed, in the light of what has gone before, it is, perhaps, doubtful—when applied to a corporation. The broad, rather than the narrow, meaning must be given.

The reasonableness of this view will be emphasized by a glance at the converse of it. Would it be anything other than that, though the bankruptcy law of 1898 prohibits corporations from becoming voluntary bankrupts, they can, without let or hindrance, become voluntary insolvents under the state law; that, though it is the policy of the bankruptcy system to administer estates through the creditors by frequent notice, and by means of an officer of their own choice, yet insolvent corporations may administer their property practically without notice, and by an officer chosen by the defunct concern; that, though it is the policy of the federal law that no creditor be given a preference, yet. by the operation of local laws, nonresident creditors may get their full due, and local creditors but a small percentage? In short, such a ruling would make the bankruptcy law not only inharmonious with the purposes which led to its enactment, but would remand creditors of insolvent corporations to laws and customs which in themselves were a frequent source of the complaints that crystallized into the demand from creditors all over the country that the present law have involuntary features, that debtors might at last be amenable to restraints and penalties long thought necessary, and as long enforced in other commercial nations.

Besides all this, there is much reason, as well as authority, in the contention that the action of this corporation is a fraud on the bankruptcy act itself. Recent cases holding to this doctrine (predicated, however, on general assignments, not receiverships) are In re Gutwillig, 90 Fed. 481, affirmed in 92 Fed. 337; In re Sievers, 91 Fed. 366. See, also, a like dictum in Re Etheridge Furniture Co., 92 Fed. 329, 332. Were it necessary, it would perhaps not be difficult to maintain even so pronounced a position, and thus to hold this corporation a bankrupt even without showing the commission by it of one of the

five acts of bankruptcy defined in the law. Without, however, going to that limit, a strong argument pointing to the propriety of the enlarged meaning of the fourth act of bankruptcy already given may be deduced from the trend of decision, prior to the act of 1898, as to the effect on the rights of creditors of a general assignment for the benefit of creditors, even if without preferences. None of our bankruptcy laws previously passed have recognized, in words, a general assignment for the benefit of creditors as an act of bankruptcy. The English bankruptcy law does not apply to corporations. They are wound up under the "Companies Act," as it is called, by a liquidator appointed by the high court of justice. There are, therefore, no English decisions available to the particular question involved. Nor are there decisions under the law of 1867, which permitted both kinds of bankruptcy where the debtor was a corporation, because, early in the administration of the law, it was decided that the appointment by a state court of a receiver to take possession of the property of a corporation was "a taking on legal process," within the meaning of the thirty-ninth section of the act. In re Merchants' Ins. Co., 3 Biss. 162, Fed. Cas. No. 9,441, and other cases previously cited. In other words, the courts were not obliged to go behind the law, and stand upon the purposes of the law. But, with reference to natural persons, the trend of judicial decision is very striking. For a century or more it has been held in England that the making of a general assignment for the benefit of creditors is a fraud on the bankruptcy law, in that it takes the administration of the estate from the hands of the officer appointed under that law, and puts it in the hands of a person or officer chosen by the failing debtor. Gazz. Bankr. (4th Ed.) p. 83. It is impossible to add anything concerning this trend of decision in England to the admirable opinions found in Barnes v. Rettew, Fed. Cas. No. 1,019, and in Globe Ins. Co. v. Cleveland Ins. Co., Fed. Cas. No. 5,486, and in the briefs of the able counsel reported in Platt v. Archer, supra. The English bankruptcy law now contains a clause analogous to ours, making a general assignment for the benefit of creditors an act of bankruptcy. Section 3, subd. a, cl. 4, Bankruptcy Act 1898. But, without it, it cannot be doubted that the broad rule referred to would still be recognized there, and that, if necessary, the courts would still hold that such an assignment is a fraud on the law. This has not always been the view of our courts. Under the law of 1841, following the English decisions, it was frequently held that such an assignment was an act of bankruptcy per se, even though not strictly within the meaning of section 1 of that law. Jones v. Sleeper, Fed. Cas. No. 7,496; Gassett v. Morse, Fed. Cas. No. 5,264; Ex parte Breneman, Fed. Cas. No. 1,830. Under the law of 1867, it was early held that such an assignment was not an act of bankruptcy, and the various district and circuit courts disagreed with each other for many years. Compare Langley v. Perry, Fed. Cas. No. 8,067, with In re Smith, Fed. Cas. No. 12,974. The question was, however, finally settled in Globe Ins. Co. v. Cleveland Ins. Co., supra,—an opinion which is luminous with learning and eloquent of industry. Compare, also, In re Kraft, 4 Fed. 523. The supreme court of the United States seemed to doubt whether, under the law of 1867, such an assignment was an act of bankruptcy. Mayer v. Hillman, 91 U. S. 496, 501. And yet in Boese v. King, 108 U. S. 379, 385, 2 Sup. Ct. 765, it finally and flatly recognized the principle. Now, if the English doctrine is the true one, and our courts so hold in many dicta, even if by reason of words in our bankruptcy laws which could be more easily stretched to the implied meaning, and thus a resort to the broad principle avoided, there are few precise holdings that a general assignment without preferences is per se a fraud on the law, and, therefore, an act of bankruptcy, though not so denominated in the words of the statute, what shall be said of an act which takes from the creditors the right to nominate their own trustee, and vests that right in a failing debtor, and which permits certain creditors to secure preferences, which, in short, nullifies the two main purposes of a bankruptcy law applicable to corporations? If the courts could spell the words "general assignment for the benefit of creditors" into the laws of the past, it certainly is no greater—indeed, it is a much less—exercise of equity powers to interpret those words as meaning, when applied to corporations, the equivalent act of liquidating through a receiver.

I therefore recommend that an order be entered adjudging the Empire

...llic Bedstead Company a bankrupt, on the ground that, being insolvent, in applying for its dissolution and for a temporary receiver under the laws of the state of New York it did an act equivalent to an assignment for the benefit of its creditors, within the meaning and purpose of the bankruptcy law of 1898, and thereby committed an act of bankruptcy. Let a report be prepared to the district court accordingly.

Lewis & Lewis (Tracy C. Becker, of counsel), for petitioning creditors.

Moot, Sprague, Brownell & Marcy (William M. Marcy, of counsel), for alleged bankrupt.

COXE, District Judge. The Empire Metallic Bedstead Company is a manufacturing corporation organized under the laws of New York. In April last the directors made application, under the provisions of the New York Code of Civil Procedure, for its voluntary dissolution. A receiver was appointed by the state supreme court and duly qualified as required by law. A petition in involuntary bankruptcy was thereafter filed by certain creditors alleging, inter alia, that the proceedings in the state court constituted an act of bankruptcy. The corporation answered denying that it had committed an act of bankruptcy. The issue thus framed was referred to the referee who reports in favor of an adjudication. The matter now comes to the court for decision under the provisions of rule 8 of this court. The sole question to be determined is whether the application for a voluntary dissolution in the state court constitutes an act of bankruptcy. All other allegations of the petition were abandoned at the argument. It is not pretended that the Metallic Bedstead Company has committed any of the acts enumerated in section 3 of the act, but it is asserted by the petitioners that the proceedings in the state court are equivalent to "a general assignment for the benefit of creditors." Even if equivalency be admitted a construction which adds a new act of bankruptcy to the law is beyond the power of the court. It is judicial legislation. A petition for a voluntary dissolution is not an assignment for the benefit of creditors. This must be conceded, and with the concession debate must cease. Were this otherwise the court might expand the list of acts of bankruptcy indefinitely by demonstrating that acts not stated in the law and not within the legislative intent produce results similar to those which follow from the acts which are there stated. Acts which one court may regard as equivalents another court may decide to be wholly dissimilar. Thus will the practitioner embark upon a shoreless sea of speculation where judicial ingenuity will be substituted for the plain provisions of the statute. If this view of the law be correct further discussion is unnecessary.

Argument designed to prove the similarity of results and the inadequacy of the law is clearly beside the mark. When the court has ascertained what the law actually provides its duty is done. The question is not what the law should be but what it is. Admitting, however, that the examination may be extended along the lines urged by the petitioners, the court is not prepared to accept their conclusions. It is thought that there is much to be said in favor of the

proposition that the proceeding for a voluntary dissolution of a corporation is not the equivalent of a general assignment for the benefit of creditors and that the omission of the former as an act of bankruptcy was not the result of inadvertence, but was intentionally made. Those who practiced under the former act will remember that one of the principal accusations against it and the one which largely influenced its repeal was the fact that it permitted reckless, and, oftentimes, revengeful creditors to take the affairs even of a solvent corporation out of the hands of the state courts and plunge it into bankruptcy against the protests of those most deeply interested. May it not be that congress deliberately intended to leave the dissolution of these creatures of statute to the courts of the sovereign that created them? There are many provisions of the act which indicate that it was not the purpose of the lawmakers to interfere so long as the proceedings are free from fraud and are not manifestly antagonistic to the purposes of the act. A corporation cannot become a voluntary bankrupt. It is, therefore, compelled to seek relief in the state courts. Only a manufacturing corporation, or one engaged in similar pursuits, can be made an involuntary bankrupt. Section 4, cls. a, b. A corporation may make an assignment for the benefit of creditors, and it must be assumed that the lawmakers had in mind the distinction between this act and the submission by the corporation of its affairs to the court in order that they may be wound up by an officer appointed by the court and under its supervision. One important difference between the two proceedings is that a general assignment usually implies insolvency; a voluntary dissolution does not. The latter course is frequently resorted to where a solvent corporation desires to go out of business. If the petitioners' contention be accepted as the correct exegesis of the law a solvent as well as an insolvent corporation can be forced into bankruptcy. By applying for a dissolution it has made a general assignment and an adjudication must follow. The fact that the corporation is abundantly able to pay its creditors is no bar. This question is set at rest by the decision of the supreme court in the case of George M. West Co. v. Lea, 19 Sup. Ct. 836, reported below, 91 Fed. 237. This was the case of a corporation which had made a general assignment. A petition in bankruptcy was filed and the corporation answered denying insolvency. The court say:

"Our conclusion, then, is that, as a deed of general assignment for the benefit of creditors is made by the bankruptcy act alone sufficient to justify an adjudication in involuntary bankruptcy against the debtor making such deed, without reference to his solvency at the time of the filing of the petition, that the denial of insolvency by way of defense to a petition based upon the making of a deed of general assignment, is not warranted by the bankruptcy law; and, therefore, that the question certified must be answered in the negative."

Thus a corporation which is not bankrupt and which has merely asked for permission to go into liquidation is forced into a position which may seriously impair the value of its property. The discussion might be pursued indefinitely and other dissimilarities pointed out, but it is unnecessary. The court is of the opinion first, that the provision of the law is too plain to admit of construction, and, second,

that even if this were otherwise, the differences between the two proceedings in question are so marked that they cannot be regarded as equivalents. The petition is dismissed.