VACCARO et al. v. SECURITY BANK OF MEMPHIS et al.

(Circuit Court of Appeals, Sixth Circuit.   July 13, 1900.)

No. 795.

**1. BANKRUPTCY—ACT OF BANKRUPTCY—GENERAL ASSIGNMENT.**
    The appointment of a receiver by a court of equity for a partnership
    after its dissolution by the death of a partner, on the application of the
    administrator of the deceased partner, although not opposed by the sur-
    viving partners, is not "a general assignment for the benefit of creditors"
    on their part, within the meaning of Bankr. Act 1898, § 3, subd. 4, which
    makes such assignment an act of bankruptcy.   To come within that provi-
    sion, the action must be voluntary and must constitute a general assign-
    ment at common law.

**2. SAME—PARTNERSHIP—APPOINTMENT OF RECEIVER.**
    The failure of the surviving partners of a dissolved partnership to
    contest the appointment of a receiver for such partnership is not permitting
    their property to be concealed or removed with intent to hinder, delay, or
    defraud their creditors, which constitutes an act of bankruptcy, under
    Bankr. Act 1898, § 3a, subd. 1.

**3. SAME—UNLAWFUL PREFERENCE—INSOLVENCY OF PARTNERSHIP.**
    A partnership is not insolvent, within the meaning of Bankr. Act 1898,
    so long as the partnership property, together with the property of the
    individual partners, which is liable for the partnership debts, is sufficient to
    pay its indebtedness; and this is true although the only partner whose indi-
    vidual estate is sufficient to render the partnership solvent is dead.   Hence,
    in such case, where the estate of the deceased partner is sufficient, after
    paying his individual debts, to pay the debts of the firm, the transfer of
    partnership property by the surviving partners in payment of a partnership
    debt is not an unlawful preference which constitutes an act of bank-
    ruptcy.

Appeal from the District Court of the United States for the West-
ern District of Tennessee.

The firm of A. Vaccaro & Co. was composed of three brothers,—A. Vaccaro,
B. Vaccaro, and A. B. Vaccaro.   A. Vaccaro died August 7, 1899, and the
Memphis Trust Company qualified as his administrator.   The surviving part-
ners, B. and A. B. Vaccaro, continued in possession of the partnership stock
and assets, and were engaged in closing up the business, until August 24,
1899, when, under a proceeding instituted by the administrator of the deceased
partner in the chancery court of Shelby county, Tenn., a receiver was appointed
for the purpose of liquidating the partnership affairs, who immediately took
possession of the firm assets.   In this condition of affairs certain creditors of
the firm holding provable debts aggregating about $10,000 filed a petition in
bankruptcy against said B. and A. B. Vaccaro as surviving partners of the
said partnership of A. Vaccaro & Co., praying that they be declared bankrupts.
The petition, as amended by leave of the court, set out a number of alleged
acts of bankruptcy, only three of which were relied upon at the final hearing.
These acts, as averred, were as follows:   (1) That said A. Vaccaro & Co. were
insolvent, and that within four months preceding the date of the filing of their
petition the "said A. Vaccaro & Co., composed of the members individually
as aforesaid, committed an act of bankruptcy, in that they did heretofore, to
wit, on the 24th day of August, 1899, make a general assignment for the benefit
of their creditors, in this, to wit:   That on said 24th day of August, 1899,
they did procure, with intent to hinder and delay their creditors, all of their
partnership property located at 278 Front street  to be transferred to O. B. Polk,
as receiver, a copy of which transfer is herewith filed, marked 'Exhibit No. 1.'
That said transfer was made with intent to hinder and delay the collection by
their creditors of their debts, and consisted in this: that the Memphis Trust
Co., as administrator of A. Vaccaro, a member of said partnership, lately de-
ceased, exhibited its bill in the chancery court of Shelby county, Tennessee,

August 24, 1899, against B. Vaccaro and A. B. Vaccaro, wherein it averred substantially that A. Vaccaro, B. Vaccaro, and A. B. Vaccaro, all of whom were brothers, had been engaged as partners in the wholesale liquor business in the city of Memphis under the firm name and style of A. Vaccaro & Co., and that said firm had been dissolved by the death of A. Vaccaro. That upon investigation into the condition of the affairs of said firm, it developed that it was very heavily indebted, and that it had not assets sufficient to pay off its indebtedness. That it owed, in round numbers, between $123,000 and $124,000. That its nominal assets were about the same amount, but that really the value of these assets was very much less than their face value, so that same will not yield enough to pay the debts of said firm. That there will be a deficiency of between forty and fifty thousand dollars. That B. Vaccaro and A. B. Vaccaro had comparatively small assets, and that the surplus of their individual estates, after paying their private debts, would not be sufficient to pay their share of the losses and indebtedness of the firm of A. Vaccaro & Co., so that it was more than probable that such losses would fall unequally upon the estate of A. Vaccaro. That the indebtedness of A. Vaccaro & Co. was daily maturing, and the surviving partners who were in charge of the business have not money with which to pay said debts. That said B. Vaccaro and A. B. Vaccaro, the surviving members of said partnership firm, were unable to raise any funds with which to pay them. That they are consequently unable to wind up said partnership, or make arrangements with their creditors as to their debts. That, under the circumstances, it was the duty of complainant in said bill to bring these matters before the chancery court, and apply for the appointment of a receiver to take charge of the assets and properties of said firm of A. Vaccaro & Co., and to collect them and administer them for the benefit of the creditors of said firm under the decrees and orders of the chancery court. Such bill prayed for the appointment of a receiver to take charge of all the partnership assets and properties, and administer the same for the benefit of the creditors of said firm. That said receiver be given orders and directions by said court, and that the creditors of said firm be required to file their claims in said cause for adjustment and settlement. Petitioners aver that, upon the filing of said bill, application was made to J. S. Galloway, judge of the probate court of Shelby county, Tennessee, on said 24th day of August, 1899, for the appointment of such receiver, and that the said J. S. Galloway, the defendants appearing, waiving notice, and consenting to such appointment, did thereupon appoint O. B. Polk receiver as aforesaid. So these petitioners aver and charge that said appointment, effecting a transfer of the assets of A. Vaccaro & Co., was made to hinder and delay the creditors of said firm, and is, in legal effect, a general assignment, and an act of bankruptcy." (2) "That said firm of B. and A. B. Vaccaro, surviving partners, while insolvent, permitted its property, viz. its stock of goods and merchandise, to be removed and concealed with intent to hinder, delay, and defraud its creditors, in this: that on the 24th day of August, 1899, said firm did permit its stock of merchandise to be transferred and removed to O. B. Polk, receiver, hereinbefore set out." (3) "That said firm of A. Vaccaro & Co., by B. Vaccaro and A. B. Vaccaro, surviving partners, while insolvent, within four months next preceding the filing of the petition herein, did, on August 23, 1899, with intent to prefer one A. J. Vaccaro over other creditors of said firm, transfer to said A. J. Vaccaro, who was then a creditor of said firm to the amount of $400, evidenced by a promissory note, not then due, a large amount of whisky and other liquors, to the value of $400." The said B. and A. B. Vaccaro answered, and denied that they had made any general assignment within the meaning of the bankrupt act: admitted that they had not contested the bill filed by the administrator of A. Vaccaro; admitted that the firm assets of A. Vaccaro & Co. were insufficient to pay the firm debts, but insisted that the individual assets of the members of the firm, including A. Vaccaro, deceased, were abundantly sufficient, after paying individual debts, to pay all the firm debts not paid by firm assets. They denied that they had procured the said equity bill to be filed, or that they had procured the appointment of a receiver. They insisted that the proceeding was in invitum as to them, and had been started and conducted in the general interest of the estate of A. Vaccaro, and that they had not contested the matter because they saw no object to be gained by such contest. They denied that they

had permitted the firm property to be "removed or concealed" "with intent to hinder, delay, or defraud creditors," within the meaning of the law, and denied the insolvency of the firm of A. Vaccaro & Co. They denied that they had transferred goods to A. J. Vaccaro with intent to prefer him over the other creditors, and again denied that A. Vaccaro & Co. were insolvent within the meaning of the bankrupt act. Much evidence was taken upon the issue thus formed. Upon a final hearing the bankrupt court adjudged the said B. and A. B. Vaccaro to be bankrupts "individually and as partners." From this adjudication both B. and A. B. Vaccaro have perfected this appeal.

Josiah Patterson, for appellants.

Thomas M. Scruggs, for appellees.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, having made the foregoing statement of the case, delivered the opinion of the court.

1. The great bulk of the evidence found in the transcript of the record relates to the question of the solvency or insolvency of the firm of A. Vaccaro & Co. at the date of the commission of the alleged acts of bankruptcy. The fact of solvency or insolvency is of no moment in respect to the alleged "general assignment" made August 24, 1899. If the appointment of a receiver under the bill of the Memphis Security Company, administrator of A. Vaccaro, was, as charged, "a general assignment," within the meaning of subdivision 4 of section 3 of the bankrupt act of 1898, it was an act of bankruptcy, whether the firm was solvent or insolvent. West Co. v. Lea, 174 U. S. 590, 19 Sup. Ct. 836, 43 L. Ed. 1098. Was the fact that a receiver was appointed in an uncontested suit the making of a general assignment? The situation was this: A. Vaccaro had died, leaving an estate worth at a fair valuation about $115,000. He owed practically no individual debts. The firm assets, at a fair valuation, amounted to $55,000, though nominally nearly double that sum. The individual estates of B. and A. B. Vaccaro, after paying individual debts, are valued at $30,000. The firm indebtedness on August 24, 1899, was, in round figures, $124,000. Of this firm indebtedness $53,000 was secured by a mortgage upon realty owned by A. Vaccaro and by pledge of personal securities owned by him individually. It was clear from these facts that the firm assets were wholly insufficient to pay firm debts, and that, after applying such assets, about $69,000 of firm debts would remain unpaid. It was also clear from the facts stated that the estate of A. Vaccaro would have to bear a much greater part of the burden of the firm debts than its proportion. When the administrator of A. Vaccaro ascertained this situation, it determined in the interest of the estate, and for the purpose of adjusting the equities between the partners, to apply for the appointment of a receiver and the liquidation of the partnership affairs under the orders of the chancery court. A bill was accordingly prepared, which substantially stated the facts as above. The theory upon which the interposition of a court of equity was sought was that the surviving partners had neither the means nor credit to provide for the payment of maturing debts, and that the estate of the deceased partner could not, at so early a stage of administration, be applied in the payment of debts of the firm; that creditors of the firm were,

therefore, likely to resort to coercive suits, which would sacrifice the firm assets as well as the property of the estate pledged for firm debts. It was also plain that the protection of the estate would require an adjustment of equities between the partners, and that as large a sum as possible should be realized from the individual estates of the surviving partners, and applied to the relief of the estate of the deceased partner. The evidence shows that the administrator and its counsel went over the whole situation with the surviving partners, and advised them of a firm purpose to file the bill and obtain a receiver. It is also satisfactorily shown that the surviving partners neither advised, counseled, nor procured the proceeding, and that all they did was to act upon the facts as they existed, and to decline to make opposition, being advised by counsel that a liquidation through a court of equity was the best course for the estate and the best for firm creditors, and that in all events their individual estates would be absorbed in the adjustment of equities between the partners after the payment of their individual debts. There is no evidence of collusion, fraud, or any other evil thing or purpose, and the business wisdom of the course proposed is most manifest. Resistance would have been in vain, for the interests of all were such as to call for the exercise of the powers of a court of equity under the circumstances as stated in the bill and as they actually were. The firm assets were utterly insufficient to pay firm debts. Before individual property could be resorted to by firm creditors, individual debts must be provided for. The unequal value of the individual estates, the fact that property of the deceased partner to the extent of $53,000 was already pledged for firm debts, involved the necessity for an adjustment of matters between the estate of the deceased partner and the surviving partners. In no other way could the firm assets be protected from seizure by execution and the sacrifice of value sure to follow.

But if the facts be regarded as substantially proving that the Vaccaros consented to the proceeding by agreeing to make no opposition, so that the proceeding could not be regarded as purely one in invitum, we are still of opinion that the appointment of a receiver under such a suit, and for the bona fide purpose of liquidating the affairs of a partnership dissolved by death, was not the making of a general assignment within the meaning of the bankrupt act. A general assignment is the voluntary act of a debtor, whereby he transfers his property to a trustee for the benefit of creditors. Its nature and characteristics were well understood. It is not enough to say that, if the same consequences ensue from the appointment of a receiver, the one act is the equivalent of the other in law. Under section 3 of the bankrupt act very serious consequences attach to the making of a "general assignment." The debtor may be ever so solvent, and the act highly advantageous to his creditors, still it is technically an act of bankruptcy, and some creditors are quite likely to imagine that some advantage will accrue by an adjudication in bankruptcy. We are not disposed to construe the provisions of subdivision 4 of section 3 as including anything as a general assignment unless it is clearly one of those assignments known to the common

law as a general assignment. The mere fact that the consequences which attach to the appointment of a receiver for the purpose of winding up a partnership or a corporation are similar to those which result to creditors from a general assignment is not enough. If the procurement of the appointment of a receiver to wind up the affairs of an insolvent partnership be an act of bankruptcy at all, it must come under some other of the subdivisions of section 3. What we here decide is that it is not a "general assignment" under that section. The conclusión we reach is fully suported by the cases of In re Empire Metallic Bedstead Co. (D. C.) 95 Fed. 957, affirmed by the court of appeals for the Second circuit in 39 C. C. A. 372, 98 Fed. 981, and the case of In re Baker-Ricketson Co. (D. C.) 97 Fed. 489. It is true that the cases cited involved corporations, and that in the case of the Empire Metallic Bedstead Company the receiver was appointed under a statute of New York providing for the dissolution and winding up of insolvent state corporations. So far as appears, however, the fact that the receiver was appointed under a state law was not regarded as of any moment, and was not the ground of the decision. In the case of the Baker-Ricketson Company no state law is referred to, and the facts are, in respect to the passive conduct of the corporation, substantially identical with those presented by this record.

2. It is next charged that the said surviving partners, "while insolvent, permitted its property, viz. its stock of goods and merchandise, to be removed and concealed with intent to hinder, delay, and defraud its creditors, in this: that on the 24th of August, 1899, said firm did permit its stock of merchandise to be transferred and removed to O. B. Polk, receiver." So far as this is intended to predicate an act of bankruptcy upon any conveyance, transfer, or removal made by the deed of the Vaccaros, it is not made out. They made no conveyance or transfer to the receiver. The first subdivision of section 3 discriminates between a conveyance or transfer made by the debtor and a concealment or removal "permitted" by him. A like discrimination between an act done and an act "suffered or permitted" is shown by subdivision 3 of section 3. If the debtor, while insolvent, "suffer or permit" a creditor to obtain a preference through legal proceedings, or if he "permit" his property to be "concealed or removed" with intent to hinder, delay, or defraud his creditor, he has committed an act of bankruptcy. But it is not declared to be an act of bankruptcy if he "permit" or "suffer" a receiver to be appointed for the general benefit of the creditors of a dissolved and insolvent partnership, and this is the most that can be said to be shown by the evidence in this case. Under the act of 1867 it was held to be an act of bankruptcy to permit the creation of a receivership. In re Baker-Ricketson Co. (D. C.) 97 Fed. 489, 491, and cases cited. But, as Judge Lowell observes in the case last cited, this ruling was based upon section 39 of that act, which made it an act of bankruptcy to "procure or suffer his property to be taken on legal process with intent to defeat or delay the operation of this act." Under that provision it was held that the appointment of a receiver was legal process. But this provision is not found in the act of 1898,

and the language of section 3, subd. 1, is by no means the equivalent of that section. A like question arose in Re Baker-Ricketson Co., cited above, and upon full consideration Judge Lowell held that the "failure to resist a bill for a receivership is not a conveyance or transfer of property by the debtor." Neither has the clause touching a concealment or removal by permission any clear bearing upon the matter of the appointment of a receiver. It would be an abuse of language and a confusion of ideas to hold that the passive conduct of the Vaccaros in respect to the bill seeking a receiver was a concealment or removal with intent to hinder, defraud, or delay creditors.

3. The next and last alleged act of bankruptcy is predicated upon the payment of a debt of $400, before maturity, to one A. J. Vaccaro, in goods sold and delivered as a payment on August 23, 1900, by the surviving partners. The first requisite necessary to constitute this transaction an unlawful preference is that it shall be shown that the debtor firm which made the payment was insolvent within the meaning of the bankrupt act of 1898. The act itself defines insolvency to be that condition of a debtor where "the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." The debt preferred was a debt of the firm of A. Vaccaro & Co. The property transferred in settlement was a part of the partnership assets, and the transfer was made by the surviving partners rightfully in possession thereof, and lawfully entitled to close up the partnership affairs. If, therefore, the partnership which owed and paid the debt to A. J. Vaccaro was not insolvent at the time of the payment, it was not an unlawful preference, the element of insolvency being essential to constitute the transaction an unlawful one. If we are to take into consideration only the joint assets of A. Vaccaro & Co., the firm was insolvent. If we can only add to the partnership assets the individual property of B. and A. B. Vaccaro, the surviving partners, after providing for the payment of their individual debts and exemptions, there was a condition of insolvency. But if we add to the partnership assets the individual property of all the members of the firm, including the deceased partner, after deducting individual debts, and exemptions, and the dower of the widow of the deceased partner, the firm was not insolvent. Each member of the firm was liable in solido for the firm debts. It is true that in equity the individual debts of a partner are entitled to be first paid out of individual property, and firm debts out of partnership property; but in each case the surplus after providing for the preferred debt is applicable to the payment of debts of the other class. This, too, is the order of payment prescribed by section 5 of the bankrupt act of 1898. The creditors of the firm of A. Vaccaro & Co. could, therefore, appropriate to the payment of their debts the entire joint assets and the surplus of the individual estates of each member of the firm after deducting exemptions, dower, etc. There is much in the present act which tends strongly to sustain the contention that a part-

nership is to be regarded as a persona or legal entity capable of committing an act of bankruptcy in its character as a firm, and of being declared bankrupt as such, although no ground might exist for an adjudication against one or more of its members. Thus the word "person," as used in the act, includes a partnership. So a "partnership" may be adjudged a bankrupt during its active life or after dissolution, and before its business is settled. Again, the act declares that the court, having jurisdiction of one of the partners, may have jurisdiction of all, "and of the administration of partnership and individual property." In Re Meyer, 39 C. C. A. 368, 98 Fed. 976, the court of appeals for the second circuit sustained an adjudication of bankruptcy against a firm as such where one of the members of the firm was dead, and where only one of two surviving partners was adjudged a bankrupt, and further held that the adjudication drew to it the administration of both the partnership assets and individual estates of the members. There is much analogy between the provisions of section 5 of the act of 1898 and the Massachusetts insolvency law of 1838, as interpreted by the Massachusetts decisions. Phillips v. Parker, 2 Cush. 175; Thompson v. Thompson, 4 Cush. 127; Dearborn v. Keith, 5 Cush. 224; Hanson v. Paige, 3 Gray, 239.

The question as to whether a partnership is to be regarded as such an entity or persona as to justify an adjudication of bankruptcy against it as such, and irrespective of any adjudication of bankruptcy against its individual members, is one not free from difficulties, many of which are suggested by the learned opinion of Judge Hammond in this case. This question need not now be decided, for we are of opinion that there can be no adjudication of the bankruptcy of the firm of A. Vaccaro & Co., or of B. Vaccaro and A. B. Vaccaro as partners, unless it is shown that the partnership and the individuals which composed the firm are insolvent. Apart from any consequences arising out of the death of A. Vaccaro, it cannot be doubted but that the insolvency of the firm and of every member would have to be averred and shown before the firm could be adjudicated bankrupt. This was the settled ruling under the Massachusetts insolvency law of 1838, upon which much of the bankrupt act of 1898 seems to have been modeled. Hanson v. Paige, 3 Gray, 239. The reason for the requirement is that every member of a partnership is liable in solido for all of the firm debts, regardless of any agreement between the partners. The fact that the individual debts of the members of the firm are to be first paid out of individual assets does not affect the question of individual liability. There is a sense in which a firm may be said to be insolvent where the joint property is insufficient to pay the joint debts. But if, in fact, there is a partner whose individual estate is ample to pay the firm debts, as well as his own, the firm is not insolvent under a law which defines insolvency as a condition where the property of the debtor at a fair valuation is insufficient to pay his debts. This was the rule upon which Judge Brown of the Southern district of New York proceeded in Re Blair (C. C.) 99 Fed. 76, when he dismissed the petition of creditors of a partnership for an adjudication of bankruptcy against the firm upon an allegation that the firm was insolvent, but which did not aver that

the individual partners were insolvent.    Upon this subject the learned judge said:

"The petition must, however, further show whether any of the individual partners are solvent.   As it stands, it is ambiguous in this regard.   It avers that the 'partnership is insolvent'; but other statements seem to intimate that by that averment it is intended only to state that the joint assets are not sufficient to pay the joint obligations.   No doubt a firm is sometimes said to be insolvent when only a deficiency of joint assets is meant.   But, as each partner is liable in solido for the debts of the company, so that they are debts of each individual member as much and as truly as they are debts of the firm; a partnership cannot, with strictness, be said to be insolvent while any one of the partners is able to pay all the firm's liabilities.   Lowell, Bankr. 359; Hanson v. Paige, 3 Gray, 239, 242; In re Bennet, 2 Low. 400, 3 Fed. Cas. 209.   By the express provision of section 5, moreover, the firm assets cannot be administered in bankruptcy if one of the partners is not adjudged bankrupt, unless by his consent.   Bank v. Meyer (D. C.) 92 Fed. 896; In re Meyer, 39 C. C. A. 368, 98 Fed. 976.   It is therefore required by rule 1 of this court that the petition shall state whether any partner not joining in the petition is solvent or insolvent.   Form 2, moreover, prescribed by the supreme court (18 Sup. Ct. xviii.), requires for an adjudication of 'the firm' as bankrupts a statement in the petition that 'the partners owe debts which they are unable to pay in full.'   This necessarily includes the individual responsibility of each, as well as their joint responsibility; and that form evidently contemplates that an adjudication of the firm imports an adjudication of all its members as well."

Does the fact that the firm has been dissolved by the death of A. Vaccaro change the necessity for such an averment and proof?  It is said that the bankrupt court cannot administer the individual estate of the deceased partner.   But quite as much, and more, might be said in respect to the individual estate of a partner not adjudged a bankrupt, for in such a case the solvent partner would not only administer his own estate, but be entitled, under section 5, to settle up the estate of the partnership, accounting in the end for the interest of the bankrupt partner.   We are unable to see that the death of one of the partners should in any wise affect the question of the insolvency of the partnership.   If the estate of the deceased is solvent, —that is, able to pay its own debts and the debts of the partnership,—the partnership cannot be said to be insolvent.   In considering this question we are to bear in mind that the term "insolvency" as used in the act of 1898 and as used in the act of 1867 has not the same meaning.   Under the act of 1867 it did not mean an absolute inability to pay one's debts by the application of one's property upon a settlement of all one's affairs, but an inability to pay debts in ordinary course of business.   Insolvency is not dependent upon whether the property liable to the creditors is in the hands of a living surviving partner or in the hands of the administrator of a dead one.   The supreme test is whether the aggregate of the debtor's property at a fair valuation is sufficient to pay the debtor's debts. The debtor here was the partnership as such and the partners individually.   If collectively there was property subject to partnership debts, the partnership was not insolvent.   Whether a part of that property was in the hands of an administrator is a matter of no moment.   It is no answer to say that the administrator should have come forward, and paid the firm debts, and looked to firm assets and the individual estates of the surviving partners for reimbursement.

That might be a sufficient answer under the act of 1867, or under the Massachusetts insolvency law, where the failure to pay debts in due course of business was an act of bankruptcy. In Thompson v. Thompson, 4 Cush. 127, the observations as to the duty of the solvent partner to pay the firm debts were based upon the definition of insolvency under the Massachusetts act of 1838. The decided and clear weight of the evidence is that the aggregate of the property of the firm and of the individual estates of A. Vaccaro, B. Vaccaro, and A. B. Vaccaro, who composed the partnership, after deducting exemptions, dower of the widow of A. Vaccaro, and making provisions for the individual debts of each, was, at "a fair valuation, sufficient in amount to pay all the debts of the partnership." A. Vaccaro & Co. were, therefore, not insolvent on August 23 or 24, 1900, within the definition of the bankrupt act, and the transfer of firm property to A. J. Vaccaro was not with intent to prefer him over other creditors, and was not an act of bankruptcy. It follows that the adjudication of bankruptcy must be reversed, and the petition dismissed, with costs.