## HORNER v. HAMNER.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1918.)

### No. 1556.

1. BANKRUPTCY ⊙⟶414(1)—DISCHARGE—SPECIFICATIONS—BURDEN OF PROOF.

One filing specifications against a discharge in bankruptcy has the burden of proving them. .

2. JUDGMENT ⊙⟶721—CONCLUSIVENESS—MATTERS CONCLUDED.

A judgment recovered in the state courts by claimant against a bankrupt, on the theory that he was liable as an indorser of notes executed by a partnership subsequently adjudged a bankrupt, is not, where the claimant, at the time of rendition of the judgment, did not know the bankrupt was then a member of the firm, a conclusive adjudication as to the bankrupt's liability as a member of the partnership.

3. BANKRUPTCY ⊙⟶31—SCHEDULES—FILING—EFFECT.

The filing of schedules in a proceeding in bankruptcy is an ex parte act on the part of the bankrupt, and in that proceeding is a solemn admission, which, unless corrected, binds him, but it is in no proper sense res judicata, either as to creditors or the bankrupt; hence the filing of schedules by one member of a firm is not a conclusive adjudication against another, who did not participate therein, but whose liability as a partner was subsequently established.

4. BANKRUPTCY ⊙⟶404(2)—DISCHARGE—FAILURE TO APPLY.

A failure to apply for a discharge in bankruptcy has the same effect as if the discharge in that proceeding had been denied.

5. BANKRUPTCY ⊙⟶404(2) — DISCHARGE — FAILURE TO APPLY — PARTNERSHIP DEBTS—"BANKRUPT."

The bankrupt, believing that a furniture business had been incorporated, sold his interest and received two notes, one signed in the purported corporate name of the partnership and the other signed by the purchasers. These notes he indorsed, and judgment was thereafter recovered against him in the state court as an indorser. The company thereafter was adjudicated a bankrupt as a partnership, and the purchasers listed the notes as liabilities; but the partnership, as such, did not apply for a discharge. Bankruptcy Act July 1, 1898, c. 541, § 1, 30 Stat. 544 (Comp. St. 1916, § 9585), declares that "bankrupt" shall include a person against whom an involuntary petition, or an application to set a composition aside or to revoke a discharge has been filed, or who has filed a voluntary petition, or who has been adjudged a bankrupt, while section 5 (Comp. St. 1916, § 9589) declares that a partnership during the continuation of the partnership business, or after its dissolution and before final settlement, may be adjudged a bankrupt. *Held* that, notwithstanding the entity theory of a partnership, the bankrupt was not as an individual precluded from obtaining a discharge from his liability, as a member of the partnership, on the notes mentioned, because of the failure of the partnership to apply for a discharge, for, in view of the entity theory, the adjudication of the partnership did not affect the bankrupt's individual liability.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bankrupt.]

---

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Western District of Virginia, at Lynchburg; Henry Clay McDowell, Judge.

In the matter of the bankruptcy of J. W. Horner. From an order granting the bankrupt a discharge from all debts provable against him, excepting two claims of S. G. Hamner, trustee, the bankrupt appeals. Reversed.

A. S. Hester, of Lynchburg, Va., for appellant.

J. Easley Edmunds, Jr., of Lynchburg, Va., for appellee.

Before PRITCHARD and KNAPP, Circuit Judges, and CONNOR, District Judge.

CONNOR, District Judge. While the transcript does not disclose specific findings of fact, the objection and specifications to appellant's petition for discharge and the answer thereto disclose the following case:

Prior to April 28, 1914, the Weaver Furniture Company, a corporation, was operated by appellant, J. W. Horner. Some time prior to that date counsel was employed for the purpose of securing an amendment to the charter, changing the name of the corporation to the People's Furniture Company. Acting upon the advice of the attorney, stationery carrying the name, the People's Furniture Company was used by the managers of the corporation, although the charter had not been amended, as they supposed. On April 28, 1914, appellant sold his entire stock in said corporation to R. A. Dearing and C. S. Dearing, and received in payment therefor, one note for $254.60, signed "The People's Furniture Co., Inc., by R. A. Dearing, Secy. and Treas.," and one other note for $366.67, signed "R. A. Dearing and C. S. Dearing." Those notes were indorsed, by appellant, to appellee "as attorney," in payment of certain debts which he held for collection against the People's Furniture Company. After the purchase of appellant's stock by R. A. and C. S. Dearing, they changed the name of the company to the Dearing Furniture Company and it so continued until November 6, 1914. It appears from the record that, at the October term, 1914, of the corporation court of Lynchburg, appellee recovered judgment against the Dearing Furniture Company and appellant, J. W. Horner, on the two notes in controversy.

On November 6, 1914, "The Dearing Furniture Company, composed of R. A. Dearing, C. S. Dearing, and J. W. Horner, was adjudicated a bankrupt," upon the petition of certain creditors of said company. Neither the Dearing Furniture Company nor either of the partners applied for a discharge. Appellee says:

"In the schedule filed in the said bankruptcy proceedings by R. A. Dearing he listed the debt due your respondent as trustee, as one of the firm debts. Your respondent did not know, until that time, that the said J. W. Horner was a partner in said firm, but, being informed of this fact, he filed proof of his said claim in the said bankruptcy proceedings."

Appellant says that "he sold his entire stock" in the People's Furniture Company, and received the notes in payment; that he then had no interest in the said company"; that some time afterwards, in the

year 1914, he purchased, or acquired, some 4 shares of stock in the Dearing Furniture Company, which he continued to hold up to the filing of the bankruptcy proceedings, October 17, 1914.

In view of this statement of appellant that he did not know that appellee was a member of the company until the·schedule in the involuntary proceeding was filed, it is manifest that, in the judgment which he recovered against the Dearing Furniture Company and. Horner, at the October term of the court, the latter was liable, not as a partner, but as indorser. Appellee says that appellant, when he sold to the Dearings, "retained a small interest." There is no evidence, nor finding in this respect. Appellant took no part in filing the schedules.

On October 5, 1916, appellant filed his voluntary petition and was adjudicated bankrupt in the District Court for the Western District of Virginia. He scheduled the judgments obtained by appellee on the notes in controversy—and several other debts, with the following statement:

"The claims hereinafter mentioned and attached hereto * * * are the same that were filed by the Dearing Furniture Company, in response to the adjudication of the company, being bankrupt in the petition of Mamie J. Rucker and others against the Dearing Furniture Company, Incorporated, a partnership composed of R. A. Dearing, C. S. Dearing, and J. W. Horner, which adjudication was of November 6, 1914, in which the judge of the District Court of the Western District of Virginia, adjudicated the Dearing Furniture Company, a partnership composed of R. A. Dearing, C. S. Dearing, and J. W. Horner, a bankrupt, and the individual members of said partnership not being mentioned or adjudicated bankrupts in said order, which claims are as follows, to wit."

No part of the record in that proceeding was introduced in this proceeding. It is conceded that the Dearing Furniture Company, and not the individual partners, was adjudicated "a bankrupt." On April 18, 1917, appellant filed his petition for a discharge "from all debts provable against his estate under said bankrupt acts, except such debts as are excepted by law from such discharge." Appellee filed objections to the granting of the petition, as to all debts which were provable in the involuntary proceeding against the Dearing Furniture Company. The District Judge granted to appellant a discharge from all debts provable against him, August 31, 1916, excepting "the two claims of appellee, which are specifically described, being the claims evidenced by the judgments, recovered on the notes referred to." To this exception appellant assigns error and appeals.

Were the notes held by appellee debts of either the People's Furniture Company, or its successor, the Dearing Furniture Company, at the date of the adjudication of the latter? Does the failure of the Dearing Furniture Company to apply for a discharge in the involuntary proceeding against it, bar his petition for a discharge in this proceeding from his individual liability, on account of the debts of the company?

[1, 2] While the facts, upon which the order appealed from, are not found, we assume that the District Judge based his conclusions upon the objections and answer. The burden of proof was upon the appellee to establish the truth of his specifications. The appellee insists

that, upon the record, appellant is estopped to deny that the notes held by him, and the judgments thereon, are the debts of the Dearing Furniture Company and that he is bound therefor as a partner—that these facts are res judicata. It is manifest that these notes were not, when contracted, the debts of the People's Furniture Company. It is true that the name of the company is signed to one of the notes. The other is signed by the Dearings. It is difficult to see how the purchase price of the stock of the company, bought by the individuals, can be made a liability of the company. If Horner, as suggested, retained an interest in the company, it is difficult to understand why he was willing to have the purchase money for the interest which he was selling made a liability of the company, thereby becoming individually liable for the debt due to himself. It is probable from what appears that, acting under the advice of counsel, the parties supposed that the People's Furniture Company was a corporation—that is, the Weaver Furniture Company under the new name. Horner seems to have become entangled in a medley of errors. After selling his stock and, in the present proceedings, surrendering his individual property, he finds himself held liable without possibility of release from notes which he accepted in payment therefor, because the Dearing Furniture Company did not apply for a discharge. This contention challenges careful investigation. The first judicial decision which the record discloses is that of the corporation court of Lynchburg, in October, 1914, when the appellee recovered judgment on the notes against the People's Furniture Company and J. W. Horner, as indorser. This we must assume, because appellee says that, at that time, he did not know that J. W. Horner was a partner. This judgment is not, therefore, res judicata as to any other liability of Horner than an indorser.

[3, 4] It is said, however, that R. A. Dearing, in the involuntary proceeding in bankruptcy against the Dearing Furniture Company, scheduled the notes as the debts of the company. That J. W. Horner was a party to that proceeding and is estopped to deny the truth of the statement of R. A. Dearing. Horner says that he took no part in the proceeding, or filing the schedules. It is manifest that this is true. Filing the schedule in a proceeding in bankruptcy is an ex parte act on the part of the bankrupt, and in that proceeding is a solemn admission which, unless corrected, binds him. It is, in no proper sense, res judicata, either as to creditors or the bankrupt. Certainly, in another and independent proceeding, it has no other force against the bankrupt than evidence of the truth of the statement.

Appellant, in this proceeding, schedules this, with other debts of the Dearing Furniture Company, stating his reason for doing so. He was evidently acting under the advice of counsel and for the manifest purpose of complying with the requirements of the statute. His action in this respect, while entirely proper, for the purpose of giving to the court, its officers, and his other creditors notice of the debts which he owed, entitled to share in the distribution of his assets, is not, in any sense, res judicata; it is not the judgment of the court. It is, by no means, clear that, appellee was entitled, in the involuntary proceeding against the company, to prove the debt which he held

against the members, and share in the distribution of the partnership assets. While one of them purported to be the debt of the company, it was competent for the trustee, or creditors of the company, to show by parol evidence that it was given for the benefit of the Dearings—and not of the company; the other note does not purport to be the debt of the company. There is a suggestion, but no proof, that the Dearing Company assumed the debts of the People's Company. This did not confer any new right upon the holder of the notes against the Dearing Company. Assuming that the notes were the debts of the Dearings, and that after their execution Horner became a partner in the People's Company, we are unable to perceive how he became liable for the notes otherwise than as indorser. R. A. Dearing, whose interest it was to do so, having scheduled appellee's debt as partnership liabilities, he was permitted to prove and share in the distribution of the assets, and now proves against Horner, individually, as he is clearly entitled to do on his liability, as indorser of the notes, and objects to his discharge because, as he alleges of his liability as a partner of the People's Furniture Company.

Conceding pro hac vice such liability, the question is presented whether, because of the failure of the Dearing Furniture Company to apply for a discharge in the proceedings against it, he is barred quoad this debt of a discharge in this proceeding. It may be conceded that a failure to apply for a discharge has the same force and effect as if the discharge in that proceeding had been denied. It is so uniformly held. Collier, Bankruptcy (11th Ed.) 347; In re Springer (D. C.) 199 Fed. 294.

[5] This, however, is not determinative of the question presented upon this record. The question relating to the effect of an adjudication of a partnership, but not of the individual partners, has given the courts much concern. It is conceded that the decisions are not uniform. The conclusion at which Mr. Collier has arrived, after a careful examination of the decisions, is:

"That it is difficult to declare a rule based upon the majority of the cases. A very unsatisfactory conflict exists among the authorities." Collier, Bankruptcy (11th Ed.) 181.

That a partnership is a "person," who may be adjudged a bankrupt, either in a voluntary or involuntary proceeding, is clear—it is so declared in the act. Bankruptcy Act, § 1. This is based upon, and results from, the "partnership entity" doctrine recognized by Bankruptcy Act 1898, § 5. That an adjudication may be made of the partnership, as distinguished from, and exclusive of, the individuals composing it. Collier (11th Ed.) 181, and cases cited.

This was done in the proceeding against the Dearing Furniture Company—the individual members were not adjudged bankrupt. The company was the "person" adjudged bankrupt. It is insisted that, because appellant did not apply for a discharge in that case from his personal, individual liability, on account of the partnership debts, he is estopped from doing so in this proceeding. That the Bankruptcy Act of 1898 recognizes a partnership as a legal entity, a "person,"

which owns property and owes debts as distinguished from the individual partners, is unquestionably true. Bankruptcy Act, § 5. The partnership creditors appoint the trustee, the partnership estate is administered separately from the estates of the partners, and applied to the discharge of partnership debts, which must be proven against the partnership. "A partnership being a distinct entity, it owns its property, and owes its debts, apart from the individual property of its members, which it does not own, and apart from its individual debts, which it does not owe. It may be adjudged bankrupt, although the partners who compose it are not so adjudicated." Collier, Bankruptcy (11th Ed.) 168, citing many cases sustaining the text. While the decisions of the federal courts discover some divergence of opinion regarding the administration of estates of partnerships, and the individual partners, when all, or several, of them are also adjudicated, the question presented, upon this appeal has not, so far as our investigation goes, been discussed or decided. Whatever confusion of thought, either real or apparent, is found in the decisions, in dealing with bankruptcy proceedings, wherein partnerships are parties, relates to questions of adjustment of priorities and administration. That Congress did not intend, by introducing the "partnership entity doctrine" into the Bankruptcy Law of 1898, based upon equitable principles applied in administering estates of insolvent partnerships, to disturb the relation of partners to the debts of the partnership, or change their liability, is pointed out by Mr. Justice Holmes in Francis v. McNeal, 228 U. S. 695, 33 Sup. Ct. 701, 57 L. Ed. 1029, L. R. A. 1915E, 706. He says:

"Since Cory on Accounts was made more famous by Lindley on Partnership, the notion that the firm is an entity, distinct from its members, has grown in popularity, and the notion has been confirmed by recent speculations as to the nature of corporations, and the oneness of any somewhat permanently combined group, without the aid of law. But the fact remains as true as ever that partnership debts are debts of the members of the firm, and that the individual liability of the members is not collateral, like that of a surety, but primary and direct, whatever priorities there may be in the marshaling of assets. The nature of the liability is determined by the common law, not by the possible intervention of the Bankruptcy Act. * * * The question is whether the Bankruptcy Act has established principles inconsistent with these fundamental rules, although the business of such an act is, so far as may be, to preserve, not to upset, existing relations."

After citing the language of the act, defining the word "person," including a partnership, which may be adjudged bankrupt, the learned justice says:

"No doubt these clauses taken together recognize the firm as an entity for certain purposes, the most important of which, after all, is the old rule as to the prior claim of partnership debts on partnership assets and that of individual debts upon the individual estate. Section 5g. But we see no reason for supposing that it was intended to erect a commercial device for expressing special relations into an absolute and universal formula—a guillotine for cutting off all the consequences admitted to attach to partnerships, elsewhere than in the bankruptcy courts."

The liability of the "person"—the partnership—for partnership debts may be enforced by subjecting the partnership property to their payment, when this "person" has been adjudicated a bankrupt; such

"person" may, upon complying with the provisions of the act, be discharged from its debts. This discharge is not granted to the individual partners, "trading" or "carrying on business" as partners, but to the partnership, a legal entity. This discharge has no effect upon the individual liability of the partners. It has been uniformly held that in a proceeding by a partnership, in which the individuals are not adjudicated bankrupt, they are not entitled to a discharge. In re Hale (D. C.) 107 Fed. 432. Judge Lowell, in Re Forbes (D. C.) 128 Fed. 137, discussing the "partnership entity" doctrine, says:

"Under an adjudication merely joint, it is impossible to discharge the partners as individuals, even from their joint debts, for every joint debt of the partnership is also a separate debt of each partner, and separate debts can be discharged only after an individual adjudication, operating upon the separate estate."

Finding difficulty in applying the entity doctrine, and to avoid confusion, the judge says that:

He "has consistently refused to make the adjudication of a partnership, unless all the partners be adjudged bankrupts at the same time."

Whether this is the correct view is not material here, because the "partnership entity" was, upon the petition of its creditors, adjudged "a bankrupt." The court was not asked to adjudge the individual partners; there was no suggestion that they were insolvent, or had committed an act of bankruptcy. Judge Lowell was of the opinion that a partnership was not "insolvent," unless each and all of the partners were so. This discards the "entity doctrine," with its logical results. In re Blair (D. C.) 99 Fed. 76; Vaccaro v. Security Bank, 103 Fed. 442, 43 C. C. A. 279. That this last view had not been adopted uniformly by the federal courts is manifest from an examination of a number of cases, in which the partnership has been adjudicated "a bankrupt," exclusive of the individual partners. Judge Sanborn, in Re Bertenshaw, 157 Fed. 363, 85 C. C. A. 61, 17 L. R. A. (N. S.) 886, 13 Ann. Cas. 986, says:

"Since the property of the unadjudicated partners does not vest in, and may not be administered by, the trustees of the bankrupt partnership, the discharge of the partnership discharges that entity only from its debts, and leaves the partners still subject to their liability to pay the unpaid balance of the claims of the partnership creditors."

We are not inadvertent to the language found in the concluding sentence of the opinion of Mr. Justice Holmes in Francis v. McNeal, supra, but do not think it affects the clause quoted. Judge Sanborn was, in the Bertenshaw Case, discussing the question regarding the administration of the estate. The language quoted is used, in the discussion, as expressing clearly what is in our minds upon the question presented in this record.

Judge Hough, in Re Pincus (D. C.) 147 Fed. 621, says:

"In a proceeding of this kind [an involuntary proceeding against a partnership] under section 5, the partnership is declared to be a 'legal entity, irrespective of the status or the separate rights or the status of the individual copartners.' * * * Individual discharges cannot be granted, under an adjudication against the partnership only. * * * No steps having been

taken in this matter by or against the partnership, as individuals, the only thing adjudicated was the partnership entity, and the only thing dischargeable is the same entity."

Assuming that Horner could not, in the proceeding against the Dearing Company, have been discharged from his individual liability for the debts of the company, and that a discharge of the company would not affect his individual liability, it is difficult to perceive why, in this proceeding, the only one in which he could have a discharge, he is barred of having a discharge of his liability for such debts, because the partnership did not apply for a discharge. It may be suggested that he should have been adjudicated a bankrupt, individually in that proceeding. To this the answer is manifest: The partnership creditors did not ask the court to do so, and there is no evidence, or suggestion, that he was, at that time, insolvent. There is no suggestion in the statute, or any decision which we have found, that Horner was under any legal obligation to become a bankrupt individually. It may be that he was of the opinion that he was not a partner, or that, after applying the partnership assets to the debts, he was able to pay the balance. However this may be, it is manifest that the only discharge which could have been granted in that proceeding was to the partnership—the Dearing Furniture Company—which would not have availed Horner. He would have been still liable individually for the debts. He has, in this proceeding, surrendered his individual property for the payment of his individual debts, among them those due appellee, either because he was a partner, or as an indorser on the notes. This is the first and only opportunity which has come to him to take the benefit of the protective provisions of the act. The court finds that he has complied with its requirements.

We are of the opinion that he is entitled to be discharged from all debts provable against his estate on the date of his adjudication. There was error in denying his discharge from the debts for which he was found to be liable because he was a partner in the Dearing Furniture Company. This will be certified to the District Court, to the end that a discharge may be granted, according to his petition.

Reversed.