**Luden A. GUTIERREZ, M.D.,
Appellant,**

v.

**MBANK THE WOODLANDS,
N.A., Appellee.**

No. 09–88–079–CV.

Court of Appeals of Texas,
Beaumont.

Dec. 1, 1988.

James A. Dunn, Houston, for appellant.

Lionel M. Schooler, Anne L. Uhrbrock, Houston, for appellee.

## OPINION

BURGESS, Justice.

This is a summary judgment case involving a guaranty agreement. We reverse.

In December 1983, Luden A. Gutierrez, M.D. and Earl Prather as trustees, executed a real estate lien note to the Woodlands National Bank in the sum of $91,500. Both Gutierrez and Prather then executed a personal guaranty. The purpose of the note and the guaranty was to provide the City of Shenendoah, Texas with an irrevocable letter of credit. This was all part of a larger transaction wherein the City would expand utilities to a tract of land owned by Gutierrez and Prather.

In May 1987, MBank the Woodlands, N.A., the successor bank, filed suit on the guaranty. Subsequently, MBank filed a motion for summary judgment. The evidence relied upon was a copy of the promissory note, a copy of the guaranty, and affidavits of a bank vice-president and the bank's attorney. The vice-president's affidavit, in pertinent part, stated:

In my capacity as Senior Vice President of the Bank, I am the custodian of records for that one certain Promissory Note executed on or about December 16, 1983 in the original principal amount of $91,500.00, executed by Luden A. Gutierrez, M.D., Trustee and W. Earl Prather, Trustee ("Promissory Note").... In connection with that transaction and contemporaneously therewith, Luden A. Gutierrez, M.D. did execute and deliver to the Bank a written Guaranty Agreement ("Guaranty Agreement") executed by him.

None of the principal amount of $91,-500.00 has ever been paid. Pursuant to the terms of the Promissory Note, the Promissory Note has accrued interest in the amount of $19,115.40 as of November 1, 1987, at the rate of $19.43 per diem, and under its terms, continues to accrue interest at that rate until paid. I have been the responsible bank officer designated to effect collection of the amounts due and owing pursuant to the Note. I instructed counsel for the Bank to issue written demand to Mr. Gutierrez, as one of the guarantors, when a default occurred under the terms of the Promissory Note. That written demand was not responded to by Dr. Gutierrez.

The attorney's affidavit stated that attorney's fees of no less than $25,000 were reasonable.

Dr. Gutierrez filed a response alleging there was an agreement that the bank would only allow the City to draw against the letter of credit for utility construction and the bank breached the agreement by allowing the city to draw for any purpose. Gutierrez also raised defenses of material variance between the guaranty and the note for which it was given, mutual mis-

take in that the guaranty did not reflect the actual agreement and common intention of the parties, failure of consideration of the underlying note, usurious interest and unreasonable attorney's fees. In support of the response, Gutierrez executed an affidavit stating there was an agreement that the letter of credit was to apply only to construction funds and the bank would periodically inspect the construction project to make certain the funds were being properly used. There was also an affidavit by an attorney controverting the reasonableness of the $25,000 sought as attorney's fees. Gutierrez then filed an amended answer asserting the affirmative defenses of mutual mistake, modification, fraud, no consideration or failure of consideration, release or abatement, and usury. Gutierrez then filed a supplement to his summary judgment response tendering certain excerpts from the deposition of the bank vice-president and bank records.

The bank then filed a response arguing that Gutierrez was estopped from asserting any of the alleged defenses because he had "voluntarily conceded that the debt was bona fide ... when he attempted abortively to have it discharged in bankruptcy." The bank's claim is Gutierrez's listing of the bank on his list of creditors and as one of the twenty largest unsecured creditors was a judicial admission of the existence and validity of the debt.

In February 1988 summary judgment was granted for the amount of the note, accrued interest and attorney's fees of $25,000.

The summary judgment cannot stand because there is a genuine issue of material fact as to the reasonableness of the attorney's fees. *Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 148 (Tex.App.—Houston [1st Dist.] 1986, no writ). The bank concedes this, but suggests a remand solely on that issue. We disagree because there is at least one other material issue of fact raised. This is the question of the mutual mistake.

■ The bank's position concerning the judicial admission in the bankruptcy court is not well taken. Citing *Horner v. Ham-*

*ner*, 249 F. 134 (5th Cir.1918), the bank makes the following statement in its brief: "The Guarantor's Bankruptcy Petition constitutes undisputed and indisputable evidence admitting Guarantor's liability for the debt in suit. Filing pleadings in a bankruptcy proceeding constitutes an *ex parte* act on the part of the pleading party and is a solemn admission which binds him." The following is the correct and complete quotation from the case:

> Filing the schedule in a proceeding in bankruptcy is an ex parte act on the part of the bankrupt, and in that proceeding is a solemn admission which, unless corrected, binds him. It is, in no proper sense, res judicata, either as to creditors or the bankrupt. Certainly, in another and independent proceeding, it has no other force against the bankrupt than evidence of the truth of the statement.

249 F. at 137.

Furthermore, the Bankruptcy Code, 11 U.S.C. sec. 101(4) defines claim as

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

and sec. 101(9) defines creditor as:

> (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;
>
> (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h), or 502(i) of this title; or
>
> (C) entity that has a community claim.

Additionally, section 521(1) of the Code requires that the debtor file a list of creditors and Bankruptcy Rule 1007(d) requires a separate list of the twenty largest unse-

cured claims in Chapter 11 cases. We hold listing of the bank as a creditor is no admission, in this proceeding, that either the claim or the amount was valid. Therefore, Dr. Gutierrez is not estopped from asserting his affirmative defenses.

Mutual mistake of fact occurs where the parties to an agreement have a common intention, but the written instrument does not reflect the intention of the parties due to a mutual mistake. In order for the affirmative defense to be sustained on summary judgment, the non-movant must raise a fact issue showing that both parties were acting under the same misunderstanding of the same material fact. *Newsom v. Starkey,* 541 S.W.2d 468, 472 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r. e.). Gutierrez, in his affidavit, raises as issue of fact that he and the bank had agreed that the bank would disburse funds only for construction purposes and would make periodic inspections of the construction site. Gutierrez also produced copies of the bank's records which showed disbursements documented on a "Real Estate Advance Sheet/Inspection Sheet" and notations on several of these sheets that a bank employee had made an inspection. This evidence raises genuine issues of material fact as to the affirmative defense of mutual mistake of fact. *See Okon v. MBank, N.A.,* 706 S.W.2d 673, 675 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

Having found at least two genuine issues of material fact to be decided upon remand, it is unnecessary to consider other potential fact issues as the trial court will be in a better position to do so after additional pleadings and complete discovery. The summary judgment is reversed and the cause remanded for trial.

REVERSED AND REMANDED.

BROOKSHIRE, Justice, concurring.

This brief opinion records my concurrence with the results reached by the Court. I especially concur with the Court's disapproval of the bank's argument that Gutierrez was estopped from asserting any of his alleged defenses because Gutierrez had the claim of MBank The Woodlands, N.A., listed as one of his creditors in a prior bankruptcy proceeding. In the bank's response to Gutierrez's raised defenses, the bank asserted that Gutierrez had conceded that the debt to the bank was a bona fide one when he attempted, in an abortive way, to have it discharged in the bankruptcy proceeding.

Even if the bankrupt, in good faith and for good reason, believes that a certain debt or obligation is not justly owed by him, it is prudent practice for the bankrupt, or his attorney, to list the same in his appropriate bankruptcy schedules. This is correct, prudent, professional practice for several reasons, one of which is that the debt or obligation probably can be adjudicated before the bankruptcy judge and at the end of the bankruptcy proceeding—at the final creditors' meeting or thereafter—the bankrupt is eligible to have this debt discharged if the same is a dischargeable debt. In sum, the debtor, whether a voluntary or involuntary bankrupt, is seeking a clear, new, financial slate and desires a born again economical life. One of the main aims of the bankrupt is to have all possible, proper debts or obligations discharged. Therefore, all debts or obligations should be listed so that the various creditors will receive official notice from the Bankruptcy Judge of the bankruptcy proceeding. This official notice advises the creditors when, where and how to file their claims. Usually, an unlisted, unscheduled creditor does not receive notice of the bankruptcy proceeding which lack of notice *may,* in turn, cause that creditor's claim to not be discharged.