**NORRITECH**

v.

**GEONEX CORPORATION and Vernon Graphics, Incorporated.**

Civil Action No. CCB–96–2177.

United States District Court, D. Maryland.

Jan. 29, 1997.

Richard Marc Goldberg, Shapiro and Olander, Baltimore, MD, for Plaintiff.

Nathan B. Feinstein, Piper and Marbury, LLP, Washington, DC, for Defendants.

### MEMORANDUM

BLAKE, District Judge.

Appellant Norritech is appealing from a ruling entered in the United States Bankruptcy Court for the District of Maryland. The appeal concerns the bankruptcy court's refusal to award post-petition administrative rent under 11 U.S.C. § 365(d)(3) to Norritech for a lease entered into by appellees Geonex Corporation ("Geonex") and Vernon Graphics, Incorporated ("Vernon"). For the reasons stated below, the bankruptcy court's Order will be reversed.

### BACKGROUND

On August 3, 1987 Vernon signed a five year lease with Norritech for premises located at 30 Montgomery Avenue, West Norriton Township, Pennsylvania. The lease provided:

(i) That ... if the Leased Premises shall be deserted or vacated for a period of ten (10) days, the entire amount of the rent then remaining unpaid under this Lease and any damages due to Lessee's default or desertion or vacation shall, at Lessor's option, become due and payable, or, at Lessor's option, this Lease may be forthwith forfeited and terminated and Lessor may enter and take possession of the Leased Premises, in which event Lessor

may relet the Leased Premises to such tenants as Lessor may deem suitable, and Lessee agrees to indemnify Lessor for any loss occurring by reason thereof.

(Debtors' Reply to Objection as to Norritech's Administrative Priority Claim, Exhibit A at 3.) The original lease between Vernon and Norritech was amended on January 29, 1988. In January 1990 Geonex acquired the stock of Vernon and then on October 14, 1991 both Vernon and Geonex amended the lease, extending the duration until January 31, 1998. Vernon and Geonex stopped making rent payments in June 1993.

On September 29, 1993 Norritech filed a civil suit against appellees in the United States District Court in the Western District of Pennsylvania alleging breach of lease and breach of contract. (Appellants' Exhibit 1, Norritech's Complaint.) The complaint specifically requested approximately $120,000.00 for the four months unpaid rent. (*Id.* at 4.) The following day Geonex and Vernon vacated the leased premises and returned the keys to Norritech.

On March 22, 1994, approximately nine months after appellees' last rent payment, Norritech entered into an exclusive sale and lease agreement with Jackson–Cross Company. The agreement gave the company the exclusive right to list for sale or lease the premises at issue in this case. Norritech signed a standard contract which contained language indicating that the offer to sell or lease was "for the Owner's account." Norritech did not inform Geonex or Vernon of the listing. The premises have not been leased or sold pursuant to that agreement or otherwise.

Norritech later filed a motion for partial summary judgment in the pending civil trial. The court granted the motion on November 14, 1994, establishing that Geonex and Vernon were liable as a matter of law on their lease obligations. The court did not determine the amount of rent that was due. Following the entry of partial summary judgment, the parties entered a settlement agreement in the civil case. The agreement acknowledged that the amount at issue totaled $2,614,672.40 plus attorney's fees and costs. (Debtor's Reply to Objection as to

Norritech's Administrative Priority Claim, Exhibit L.) The settlement agreement further provided that it would be null and void if Geonex and Vernon failed to perform. As a consequence of the settlement agreement, the case was dismissed on December 5, 1994.

On February 27, 1995, one day before the scheduled performance of the settlement agreement, Geonex and Vernon filed their petition for Chapter 11 bankruptcy. The agreement was never performed and therefore was vacated by its terms. When the appellees submitted a Schedule G in their bankruptcy proceedings listing unexpired leases for purposes of § 365(d)(3), the Norritech lease was included in this list. The lease was rejected by the trustee on June 29, 1995 following an extension of time.

In the course of the bankruptcy proceedings Geonex and Vernon entered into a settlement agreement with Norritech concerning certain unsecured non-priority claims representing pre-petition rent payments, reserving the issue of post-petition amounts due. On March 7, 1996, appellees filed objections to Norritech's additional claim for an unsecured priority claim in administrative rent under § 365(d)(3). The bankruptcy court sustained the objection.

## ANALYSIS

The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard and conclusions of law are reviewed *de novo*. *Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Properties Ltd. Partnership)*, 99 F.3d 151, 154 (4th Cir.1996); *First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enterprises, Inc.)*, 81 F.3d 1310, 1314 (4th Cir.1996); *Butler v. David Shaw, Inc.*, 72 F.3d 437, 440–41 (4th Cir.1996). Because the relevant facts in this case are undisputed, a de novo standard of review will be applied.

In the bankruptcy court's Order Judge James F. Schneider concurred with and adopted the reasoning in Geonex and Vernon's Reply to Norritech's Response to the Objection as to Norritech's Administrative Priority Claim. (*See* Bankruptcy Court's Or-

der dated June 11, 1996.) Based on that reasoning the court adopted three conclusions of law: (1) the lease in question terminated before tenants filed their petition for bankruptcy; (2) the landlord's claim is barred by estoppel; and (3) the landlord is not entitled to administrative rents because there was no benefit from the lease to the bankruptcy estate. Norritech argues on appeal that these conclusions were in error and that 11 U.S.C. § 365(d)(3) entitles them to payment of rent on the unexpired lease of non-residential real property.[1]

## I. Termination of the lease pre-petition.

■ The bankruptcy court found that Norritech was not entitled to post-petition administrative relief because the lease was terminated pre-petition. In order to determine whether the lease was terminated the court looks to Pennsylvania law.[2] *See In re M.H.I., Inc.,* 61 B.R. 69, 70 n. 1 (Bankr. D.Md.1986) (applying Maryland landlord-tenant law); *see also In re Merry–Go–Round Enterprises, Inc.,* Nos. 94–5–0161 to 94–5–0163, 94–5–3774, 95–5–4523, 1996 WL 69688 at *2 (Bankr.D.Md. Jan. 23, 1996) ("Bankruptcy looks to state law to determine property rights, and such a determination would include when a lease is terminated.")

■ Under applicable Pennsylvania law, the tenant's abandonment must be accompanied by the lessor's acceptance in order to constitute a surrender for purposes of terminating the lease. *Ralph v. Deiley,* 293 Pa. 90, 141 A. 640, 642 (1928) ("Surrender is a contractual act, and it occurs only through the consent of both parties, evidenced by an express agreement or unequivocal act of the parties which implies they have agreed to consider the surrender as being made.") In *Brill v. Haifetz* the Pennsylvania Superior Court explained:

Whether there has been a surrender by operation of law

depends on the intention of the parties, to be deduced from their words and acts, and is ordinarily a question of fact for the jury. The burden of proof is on the party alleging a surrender by operation of law to prove it, and, where it is to be inferred from circumstances or conduct inconsistent with intention to perform, the proof must be clear.

158 Pa.Super. 158, 44 A.2d 311, 313 (1945) (quotations and citations omitted).

■ That a landlord has accepted a tenant's surrender cannot be inferred from mere repossession of the property. *Jonnet Development Corp. v. Dietrich Industries, Inc.,* 316 Pa.Super. 533, 463 A.2d 1026, 1034 (1983). In order to show acceptance there must be evidence indicating that the repossession of the premises "is adverse to a reoccupation of it by [the tenant] and a renewal of the relations created by the lease." *Id.* (quotations and citations omitted); *see also In re Slim Life Weight Loss Centers, Corp.,* 182 B.R. 701, 703 (Bankr.D.N.J.1995) (applying Pennsylvania law).

■ Neither party has pointed to a Pennsylvania case identical to this one in which the court considered the effect of the lessor's listing the property for sale. The Pennsylvania courts have however, addressed cases involving relet, repair and sim-

---

1. The code section provides:

 The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

 11 U.S.C. § 365(d)(3).

2. Norritech argues that the bankruptcy court improperly applied bankruptcy law instead of Pennsylvania state law to resolve the issue regarding the pre-petition termination of the lease. After reading the record it appears more likely that the court applied Pennsylvania law in order to determine if there was abandonment and acceptance, and relied on bankruptcy law to establish the legal effect of the termination. This interpretation of the record is consistent with the court's adoption of appellees' arguments applying Pennsylvania law and also clarifies Judge Schneider's remark on the record that "the Bankruptcy Code will take priority by reason of the supremacy clause over any opinions of the Pennsylvania state courts relating to *the legal effect* of abandonment of leased premises." (Transcript of June 4, 1996 proceedings before Judge Schneider (emphasis added).) In any event, both parties agree that state law applies to the determination of whether the lease was terminated and Pennsylvania law will be applied.

ilar actions by a landlord. Norritech relies on *Ralph v. Deiley* to establish its right to the administrative rent. 141 A. 640. The *Ralph* decision indicates that in the absence of express agreement an "unequivocal act" can indicate a landlord's acceptance. *Id.* 141 A. at 642. The court explained the nature of the proof necessary:

> To show [a landlord's acceptance], there must be evidence of acts so inconsistent with the terms of the first lease that the relation of landlord and tenant, established by the reletting, could not be enforced under the terms of the first lease. Such acts would indicate as a logical and reasonably necessary result that the lessor intended to accept the surrender tendered by the lessees. These acts must be distinguished from acts of the landlord in protection of the property after an attempted surrender.

*Id.* (citation omitted). Whether the landlord notifies the tenants is not relevant. *Id.* 141 A. at 643. " 'Taking possession, repairing, advertising the house to rent [by the landlord], are all acts in the interest and for the benefit of the tenant and do not discharge him from his covenant to pay rent.' " *Wilson Laundry Co. v. Joos,* 200 Pa.Super. 595, 189 A.2d 917, 919 (1963) (quoting *Breuckmann v. Twibill,* 89 Pa. 58, 59). *See also Cusamano v. Anthony M. DiLucia, Inc.,* 281 Pa.Super. 8, 421 A.2d 1120, 1125 fn. 9 (1980) (advertising for relet does not mean the landlord accepted the surrender).

In *Jenkins v. Root* the Supreme Court of Pennsylvania considered when a landlord's actions constitute acceptance and thereby termination of a lease. 269 Pa. 229, 112 A. 153, 153 (1920). The language of the case emphasizes that a surrender by operation of law is effected upon the *creation of an inconsistent estate,* not the mere listing of the property:

> [T]he surrender by operation of law must occur through some act of the landlord so inconsistent with the relation of landlord and tenant and incompatible with the existing terms of the lease as to imply the parties agreed to consider surrender as being made—as, for instance, the creation of an inconsistent estate with the consent

of the lessee.... Where the first lessee, without right, abandons the possession, the landlord may resume possession and rent or repair the property ... and the joinder of the first lessee in securing another tenant will not work a surrender in law unless the owner agrees thereto. Such leases are not the creation of independent and inconsistent estates, but are dependent and consistent estates for the benefit of the original lessee, though taken in the name of the lessor owner....

*Id.* 112 A. at 154. This interpretation is consistent with cases indicating that the listing for relet, or reletting for a period less than the original lease, do not effect a landlord's acceptance of surrender. *See e.g., Brill,* 44 A.2d at 313; *Ralph,* 141 A. at 643. This result is not altered by the landlord's signing a form contract indicating that the proposed lease or sale is to benefit the landlord's account. *See Jenkins,* 112 A. at 154.

■ The circumstances in this case do not provide clear evidence that the actions taken by Norritech were anything more than an attempt to mitigate losses. While the act of listing the property for sale may be construed as evidence of an intention to accept the surrender, it does not rise to the level of an "unequivocal act" because no contract of sale was ever entered. Where no independent, inconsistent estate was actually created this court cannot conclude that the landlord accepted the surrender and thereby terminated the lease.

■ Accordingly, Geonex and Vernon have not met their burden of showing that actions taken by Norritech were so inconsistent as to constitute acceptance of their surrender. *See Ralph,* 141 A. at 642. To the contrary, Geonex and Vernon effectively admitted that the lease was unexpired when they listed it in the original Schedule G and in the request for a further extension of time to assume or reject unexpired leases. *See Sovran Bank, N.A. v. Anderson,* 743 F.2d 223, 225 n. 1 (4th Cir.1984) (citing *Horner v. Hamner,* 249 F. 134, 137 (4th Cir.1918)) (filing a schedule in bankruptcy is a binding admission). Accordingly, this court finds as a matter of law that the lease was not terminated pre-petition.

## II. *Entry of partial summary judgment and the effect of judicial estoppel.*

In the previous civil suit filed in the Western District of Pennsylvania Norritech sought to recover payments due as a result of Geonex's breach of lease and breach of contract. (*See* Appellant's Exhibit 1, Norritech's Complaint ¶¶ 15–18.) The court established that Geonex was liable on the lease when it entered partial summary judgment in favor of Norritech, but did not address the issue of damages.

In the bankruptcy proceedings, the court adopted Geonex's and Vernon's arguments regarding the effect of the partial summary judgment: first, that Norritech was estopped on the basis of res judicata from raising the claim for post-petition administrative rents; and second, that Norritech was judicially estopped from taking a position in the bankruptcy litigation that was contrary to the position taken in the earlier civil suit.

These rulings rest on the conclusion that Norritech sought accelerated rent in the prior litigation. The undisputed evidence indicates that Norritech did not seek such payments. Norritech's complaint sought only the rent due and owing for June, July, August, and September 1993. (*See* Appellant's Exhibit 1, Norritech's Complaint ¶¶ 10–11). The amounts requested in relief, approximately $120,000 per count, support this view. Accelerated rent payments are not mentioned anywhere in the complaint.

 Geonex and Vernon argue that the settlement agreement considered the value of the accelerated payments and is evidence that Norritech sought these payments in the suit. The agreement appears to have contemplated accelerated rent because it stated that the amount in issue was in excess of two million dollars, not including attorney's fees and costs. All parties agree however, that the settlement payment was never made. The agreement provided that if Geonex and Vernon did not perform, the settlement was to be considered null and void and the dismissal vacated. As a result, the agreement is not evidence of what was sought in the suit and will not be considered relevant for purposes of applying res judicata or collateral estoppel.

 Geonex and Vernon also argue that Norritech should be barred from raising the present claims because even if Norritech did not seek accelerated rent in the prior suit, it should have, and cannot raise the issue now. While it is normally true that a plaintiff will be barred by claim preclusion if he or she fails to bring all actions related to the same set of facts at the same time, the situation here is quite different. The parties signed a lease indicating that in the event of a breach the lessor had the option of demanding payment of rent then unpaid, or of terminating the lease, re-entering, taking possession and reletting. (Debtors' Reply to Objection as to Norritech's Administrative Priority Claim, Exhibit A at 3.) At the time suit was filed, Geonex and Vernon had not left the premises. Norritech clearly was exercising the first option. Norritech's subsequent re-entry was the result of the debtors' abandonment and was not in any way an exercise of an option by Norritech to accept that abandonment. As a result, Norritech was free to exercise its right under the contract to pursue only part of the amount due and owing.

 Even assuming *arguendo* that Norritech did or should have sought accelerated rent, Norritech is not estopped from seeking post-petition relief in bankruptcy. In order for a ruling to have a preclusive effect it must be final. *See Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1473 & n. 19 (4th Cir.1996); *see also Avondale Shipyards, Inc. v. Insured Lloyd's,* 786 F.2d 1265, 1269 (5th Cir.1986) (citing cases) (observing that final judgment is necessary for collateral estoppel and res judicata). Entry of partial summary judgment on the issue of liability is interlocutory. *See* Fed.R.Civ.P. 56(c) ("A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.") Because partial summary judgment on liability only lacks finality it has no preclusive effect. *See Avondale Shipyards, Inc.,* 786 F.2d at 1269.

 Furthermore, Norritech is not judicially estopped from seeking post-petition

rents in bankruptcy. Because this court has found that Norritech did not seek accelerated rent payments in its suit in Pennsylvania, Geonex and Vernon have not established that Norritech took inconsistent positions in two courts of law. Accordingly, Norritech was not barred by collateral or judicial estoppel from seeking recovery for post-petition rents in bankruptcy.

### III. *Benefit requirement under § 365(d)(3).*

The bankruptcy court found that even if the lease had not expired pre-petition, § 365(d)(3) did not entitle Norritech to administrative rents because the lease in question provided no benefit to the estate. Section 365(d)(3), however, provides that rent from an unexpired lease of nonresidential real property shall be paid by the trustee until it is rejected *"notwithstanding section 503(b)(1) of this title."* 11 U.S.C. § 365(d)(3).

Section 503(b)(1) provides that administrative expenses are payable only if they are "actual, necessary costs and expenses of preserving the estate...." 11 U.S.C. § 503(b)(1)(A). This language has been interpreted to mean that the only claims entitled to be recognized and paid are those which conferred a benefit on the estate. *Augusta Mall Partnership v. Twigland Fashions, Inc. (In re Twigland Fashions, Inc.),* 198 B.R. 199, 200 (W.D.Tex.1996); *Broadcast Corp. of Georgia v. Broadfoot,* 54 B.R. 606, 610 (N.D.Ga.1985), *aff'd,* 789 F.2d 1530 (11th Cir.1986).

Courts have disagreed on whether a benefit to the estate must be shown before administrative rent may be paid under § 365(d)(3). The majority of courts have held that, under § 365(d)(3), the lessor does not need to show a benefit to the estate prior to receipt of post-petition administrative rent. *See, e.g., Thinking Machines Corp. v. Mellon Financial Services Corp. (In re Thinking Machines Corp.),* 67 F.3d 1021, 1024 (1st. Cir. 1995); *Towers v. Chickering & Gregory (In re Pacific–Atlantic Trading Co.),* 27 F.3d 401, 405 (9th Cir.1994); *In re Twigland Fashions,* 198 B.R. at 200.

In *In re Pacific–Atlantic Trading Co.* the Ninth Circuit refused to impose the benefit requirement, finding such an imposition to be "wholly inconsistent with the mandate of section 365(d)(3)." 27 F.3d at 404. The same opinion overruled *In re Orvco, Inc.,* 95 B.R. 724 (9th Cir. BAP 1989), *see In re Pacific–Atlantic Trading Co.,* 27 F.3d at 404–05, a case heavily relied on by minority courts. *See, e.g., In re Myrtle Beach Golf & Yacht Club,* 118 B.R. 406, 407 (Bankr.D.S.C.1990).

Two cases in this district have reached the same result as the majority of other courts considering this issue. *See In re M.H.I., Inc.,* 61 B.R. 69 (Bank.D.Md.1986); *In re Merry–Go–Round,* 1996 WL 69688. Geonex and Vernon argue, however, that these Maryland cases have limited the application of the "no benefit" requirement in § 365(d)(3) to properties leased in shopping centers.

The 1984 amendments to the Bankruptcy Code which included § 365(d)(3) are referred to as the "shopping center amendments." *See In re M.H.I.,* 61 B.R. at 70. Indeed, the legislative history indicates that the provision was intended to ease the special problems faced by creditors and adjacent property owners in shopping centers when a lessee declares bankruptcy. *See id.; see also In re Thinking Machines Corp.,* 67 F.3d at 1024 (discussing the shopping center amendments in the context of commercial landlords and an office building lease). Neither the legislative history nor the amendment itself, however, contain language restricting the application of this section to shopping centers only. Other courts have applied § 365(d)(3) to commercial properties such as office buildings. *See In re Pacific–Atlantic Trading Co.,* 27 F.3d at 402 (dealing with a lease for the twenty-second and twenty-third floors of an office building); *In re National Oil Co.,* 80 B.R. 525, 525, 527 (Bankr.D.Colo.1987) (dealing with the lease of commercial office space). In *In re Coastal Dry Dock and Repair Corp.,* the court found that no benefit showing was required when § 365(d)(3) was applied to part of the naval yard used by a corporation in the business of repairing and converting commercial sea vessels. 62 B.R. 879, 881 (Bankr.E.D.N.Y.1986).

This court agrees with the majority approach and finds that Norritech is not

required to show a benefit to the estate prior to recovery of post-petition administrative rents under § 365(d)(3). Accordingly, Norritech is entitled to administrative rent from the filing of the petition on February 29, 1995 until the court approved the trustee's rejection of the lease on June 29, 1995. *See In re Virginia Packaging Supply Co.*, 122 B.R. 491, 494 (Bankr.E.D.Va.1990). This rent represents the price of the trustee's opportunity to take 60 days, or in this case 120 days, to decide whether the lease is beneficial to the estate and should be continued. *In re Merry–Go–Round, Inc.*, 1996 WL 69688 at *3.

### IV. *Entitlement to late charges.*

In the bankruptcy proceedings Norritech also sought to recover late charges associated with post-petition rent payments. The bankruptcy court did not consider whether Norritech was entitled to these late charges, because its other rulings did not require it to reach that issue. On appeal, the granting of late charges was not fully briefed. Accordingly, this case will be remanded to the bankruptcy court to fully consider the issue of late charges and enter an Order not inconsistent with this opinion.