## In the Matter of POTOMAC SYSTEMS ENGINEERING INC., Debtor(s).

### Bankruptcy No. 96–80984–JAC–7.

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

April 18, 1997.

---

Robert Reynolds, Huntsville, AL, for Bourj, Ltd.

Tazewell Shepard, Huntsville, AL, trustee.

## ORDER

JAMES CADDELL, Bankruptcy Judge.

This matter is before the Court on objection by the trustee pursuant to 11 U.S.C. § 502(b)(6) to the administrative claim of Bourj, Ltd., as amended, in the amount of $ 127,688.96, for rent accruing during the sixty days subsequent to the entry of the order for relief entered on April 30, 1996. The evidentiary hearing in this matter was held on the 16th day of April, 1997. Upon due consideration of the evidence, arguments of counsel and relevant law, the Court will overrule the objection by the trustee and allow Bourj's administrative claim to the extent of $ 99,638.96.[1]

Bourj is the owner and lessor of certain non-residential real property located at 7611 Little River Turnpike in Annandale, Virginia. On July 27, 1990, Bourj leased certain suites in the premises to the debtor pursuant to a written lease agreement.[2] Pursuant to the terms of the lease, as amended, the debtor leased suites 400 and 500 of the premises for $56,100.00 per month, with the term of the lease to expire on February 28, 1997.

The debtor stopped paying rent to Bourj in May, 1995 and subsequently vacated the leased premises on or before June of 1995.

By letter dated May 31, 1995, attached as exhibit A, counsel for Bourj informed debtor that Bourj did not accept debtor's abandonment as a surrender of the leased premises and that debtor remained liable for all accrued and accruing rent under the terms of the lease. The letter further advised the debtor that Bourj intended to take possession of certain furniture and equipment left on the premises pursuant to Bourj's landlord lien. Additionally, counsel for Bourj stated that, although under no duty to do so, Bourj was attempting to re-let the premises to mitigate damages.

Subsequent to obtaining possession, Bourj proceeded to collect the furniture abandoned in suites 400 and 500 into one common area and sold the same for approximately $10,000 to $12,000. Bourj instituted a state court action against the debtor in the Circuit Court of Fairfax County, Virginia to collect past due rent through November 1, 1995.[3]

By written lease agreement dated February 28, 1996, as modified, Bourj re-let the premises to Vector Research, Inc. for $ 20,-718.75 per month, with an effective commencement date of July 26, 1996 for suite 400 and a later date to be determined in the future for suite 500. In June of 1996, Bourj entered suite 400 for the purpose of making certain buildout of improvements to the premises in anticipation of re-letting the premises to Vector.

On April 1, 1996, certain creditors filed an involuntary Chapter 7 bankruptcy petition against the debtor. The Court appointed Tazwell Shepard as Chapter 7 trustee on April 12, 1996. Section 365(d)(3) of the Bankruptcy Code imposes an affirmative duty upon the trustee to timely accept or reject nonresidential real property leases within sixty days after the order for relief and to continue to pay rent payments as they

---

1. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as made applicable to contested matters in bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 9014.

2. The terms of the lease agreement were amended on several occasions with the last amendment occurring prior to February, 1995.

3. Bourj obtained a default judgment against the debtor in the amount of $517,872.68, plus 9% interest, in the state court action for accrued rent. It is uncontroverted that the state court action did not terminate the lease.

become due until such time as the lease is expressly rejected by the trustee or as a matter of law. 11 U.S.C. § 365(d)(3). The expense of post-petition administrative rent represents the price of the bankruptcy trustee's opportunity to take time to decide whether the lease is beneficial to the estate. *Norritech v. Geonex Corp.*, 204 B.R. 684, 690 (D.Md.1997).[4]

The debtor's position is that there was nothing for the trustee to accept or reject under § 365(d)(3) as Bourj effectively terminated the lease by re-entering, moving and storing the abandoned furniture on the premises, selling said furniture from the premises, and re-letting the premises to Vector. Bourj asserts that it did not accept the debtor's surrender of the property at any time and that the lease remained in full force and effect until rejected as a matter of law pursuant to § 365(d)(1).

■ Termination of a lease requires a finding of (1) intent to surrender the leased premises by the lessee and (2) acceptance of the surrender by the lessor. *In re Windsor, Inc.*, 201 B.R. 133, 135 (Bankr.D.Md.1996). In the present case, there is no dispute that the debtor vacated the premises with an intent to surrender. Thus, the only issue before the Court is whether Bourj accepted debtor's surrender of the premises.

■ To determine whether the lease was terminated, for bankruptcy purposes, the Court must turn to Virginia law. *tenBraak v. Waffle Shops, Inc.*, 542 F.2d 919, 922 (4th Cir.1976); *In re Windsor, Inc.*, 201 B.R. at 135. Although Virginia law directly on point is sparse, the Fourth Circuit in the case of *Waffle Shops, Inc.* summarized a lessor's options under Virginia common law governing a landlord's recovery upon a tenant's abandonment as follows: (1) the lessor may re-enter and terminate the lease; (2) re-enter for the limited purpose of re-letting without terminating the lease; or (3) refuse to re-enter and initiate an action for accrued rents. *Id.* at 924–25.

■ The Court finds that the facts of the present case do not demonstrate an acceptance of abandonment. Acceptance of abandonment may be discerned from a landlord's express acceptance or acceptance by implication. *In re Windsor*, 201 B.R. at 136. The debtor asserts that the actions of Bourj constituted a use of the premises for Bourj's own purposes sufficient to create an implied acceptance of surrender and effect a termination of the lease. The cases addressing acceptance by implication "caution that the actions of the landlord subsequent to the abandonment must be substantial enough to evidence reappropriation of the premises and an intent to foreclose any future rights of the tenant in the premises." *Id.* (citations omitted).

In the case before the Court, Bourj re-entered the subject premises to dispose of the furniture abandoned by the debtor and to make certain buildout of improvements for the purpose of re-letting the premises for the benefit of debtor's account which is permissible under applicable Virginia law. The Court does not believe that such actions constituted a utilization of the premises for Bourj's own purposes, but were instead for the benefit of debtor's account. Indeed, by letter dated May 31, 1995, Bourj informed the debtor, that although under no duty to mitigate, Boumj was attempting to re-let the premises for this purpose. Bourj further expressly stated that it did not accept the abandonment as surrender of the premises. Accordingly, the Court does not believe that any of the actions taken by Bourj subsequent to this letter evidence an intent of Bourj to accept the surrender and terminate the lease.

Upon consideration of the foregoing, the Court finds, and it is ORDERED, ADJUDGED AND DECREED that:

1. The objection by the trustee to the amended administrative claim of Bourj, Ltd., be and hereby is OVERRULED.

---

4. Bourj is not required to show a benefit to the estate to recover its administrative claim for post-petition rent under § 365(d)(3). *See In re Geonex Corp.*, 204 B.R. at 690; *In re Pudgie's Dev. of NY, Inc.*, 202 B.R. 832 (Bankr.S.D.N.Y.1996)(providing that "[t]here is no predicate for the 'actual' and 'necessary' test of section 503(b)(1)(A) because section 365(d)(3) requires payment 'notwithstanding section 503(b)(1)' ").

2. The administrative claim of Bourj shall be reduced by one-half of the monthly rent for June, 1996 while Bourj was in the process of making certain buildout of improvements to suite 400 of the leased premises for a total administrative claim of $ 99,638.96.

## EXHIBIT A

A PARTNERSHIP INCLUDING PROFESSIONAL
CORPORATIONS

1501 FARM CREDIT DRIVE
MCLEAN, VIRGINIA 22102–5000
(703)790–7900
FACSIMILE
(703)821–2397

2300 N STREET, N.W.
WASHINGTON, D.C. 20037–1126

919 THIRD AVENUE, SUITE 2130
NEW YORK, NEW YORK 10022–3897

115 SOUTH UNION STREET
ALEXANDRIA, VIRGINIA 22314–3361

201 LIBERTY STREET, S.W.
LEESBURG, VIRGINIA 22075–2721

SCOTT E. BARAT
(703)790–7995

May 31, 1995

VIA FACSIMILE

(202)434–5028

Terrence O'Donnell, Esq.

Williams & Connolly

725  12th Street, N.W.

Washington, D.C. 20005

Re: Potomac Systems Engineering, Inc. ("Potomac")

Dear Mr. O'Donnell:

As you know, this firm represents Bourj, Ltd. ("Landlord"), the Landlord under Potomac's lease (the "Lease") for Suites 400 and 500, 7611 Little River Turnpike, Annandale. Virginia (the "Premises"). As we discussed today, Potomac has abandoned the Premises. Landlord does not accept Potomac's abandonment as an acceptance of a surrender of the Premises. The Lease remains in full force and effect and Potomac remains liable for all rent, damages, and other charges that have accrued and that continue to accrue under the Lease.

Although Landlord is under no duty to mitigate damages, Landlord is attempting to re-let the Premises. will let you know if Landlord's efforts in this regard arc successful.

Potomac has left certain furniture and equipment at the Premises. Landlord is taking possession of this furniture and equipment pursuant to its lien on such property.

Potomac has not left any forwarding address or telephone number at which Potomac may be reached. Please let me know Potomac's current address and phone number so Landlord can contact Potomac if necessary.

Finally, this will confirm that you will be speaking with Potomac's new CEO and Trustee, Carl Fitz, about the consent judgment arrangement that we discussed last week. Please let me know as soon as possible what Potomac's position is.

Nothing in this letter shall be deemed to waive any default under, or breach in violation of, the Lease or other obligations not mentioned herein, and this letter shall be without prejudice to Landlord's rights and remedies with respect to any and all defaults, breaches, or violations.

Sincerely,

/s/ Scott E. Barat
Scott E. Barat

cc: Mr. Imad A. Baker (via facsimile)

Kevin J. Mullin, Esq. (via facsimile)